[Crim. No. 24784. Aug. 11, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ALONZO COLLINS, Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Supreme Court, and Dennis A. Fischer for Defendant and Appellant.

Frank O. Bell, Jr., State Public Defender, Theresa B. Doyle and George L. Schraer, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart, Ernest Martinez and Terry T. Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

Ira Reiner, District Attorney (Los Angeles), Donald J. Kaplan and Richard Sullivan, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MOSK, J.**—In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], we held that article I, section 28, subdivision (f), of the Constitution (hereinafter section 28(f)), adopted as part of Proposition 8 on the June 1982 Primary Election ballot, authorizes the impeachment of a witness in a criminal trial by a prior felony conviction that necessarily involves moral turpitude, but that the trial court retains its discretionary power under Evidence Code section 352 (hereinafter section 352) to exclude any such conviction when its probative value is outweighed by the risk of undue prejudice.[1] In reviewing this conviction of burglary, we adopt a procedure for applying the *Castro* rule to cases tried before the date of that decision and still pending on appeal. Under that procedure, we reverse the judgment of the Court of Appeal with directions.[2]

Defendant was charged with committing, on April 2, 1983, either the crime of burglary of an automobile (Pen. Code, § 459) or the crime of receiving stolen property (*id.*, § 496). The information further alleged that

---

[1] Section 28(f) provides: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[2] In his petition for review defendant raised several issues relating to the application of *Castro* to cases tried before it was decided. We granted review after May 6, 1985; the case is therefore subject to certain new and amended rules of court adopted as of that date to implement Proposition 32, enacted at the November 1984 General Election. (See Cal. Const., art. VI, § 12, as amended Nov. 6, 1984.) These rules limit the scope of the appeal following a grant of review in this court: in our decision we will ordinarily consider the merits of "Only the issues set forth in the petition and answer or fairly included in them . . . ." (Cal. Rules of Court, rule 28(e)(2).) In unusual cases we may specify additional issues for review. (Rule 29.2(b).) In the case at bar no answer was filed and we did not specify additional issues; we will therefore consider only the issues stated in the petition. We need not, however, *decide* all those issues: we are authorized to decide less than all the issues presented (rule 29.2(a)), and we will ordinarily reach only those necessary to our disposition of the cause. In the case at bar, for example, we find it unnecessary to review defendant's contention that he has "standing" to complain of the ruling at issue; the contrary position was taken by the Court of Appeal on its own motion, and the People do not attempt to defend it.

on November 1, 1982, defendant had suffered a prior conviction of burglary. He pleaded not guilty and denied the latter allegation. At the start of trial the prosecution disclosed out of the presence of the jury that defendant had also suffered a prior conviction of robbery on November 1, 1982, but that service of sentence thereon had been stayed.

Robert Hoeven testified that at 4 p.m. on the day in question he parked and locked his pickup truck and camper shell at his place of work. Some two hours later he returned to the vehicle and found it had been burglarized. Missing were a dashboard-mounted AM/FM cassette player, a blue nylon jacket bearing his company logo patch and a name tag, a pair of angled needlenosed pliers, a camera tripod, and a canvas daypack containing two Nikon camera bodies, several lenses and filters, and binoculars.

John Shepard testified that in the late afternoon of the same day he and his cousin were driving their pickup truck about a quarter of a block from the scene of the crime when they saw defendant hitchhiking. They stopped and he climbed into the back of their truck; he was wearing a blue nylon jacket and carrying a backpack and a paper bag. Five minutes later they were pulled over by Deputy Sheriff Nadeau for having expired license plate tags.

Officer Nadeau testified that as he walked towards the truck he saw defendant throw away the paper bag he had been holding. The officer heard a sound of metal and saw an expensive-looking AM/FM cassette player protruding from the bag. He asked defendant why he was throwing away such an expensive piece of equipment, and defendant replied, "What equipment? It must belong to the guys in the cab." When the latter denied owning the cassette player, Officer Nadeau questioned the defendant further.

The officer asked defendant if the tripod lying beside him was his; defendant replied it was and said he was a photography student, but he was unable to name the school he attended. While talking with him, the officer observed in his back pocket two utility knives, a pair of pliers, and gloves. Defendant told Officer Nadeau to look inside his backpack, saying that his father had bought him "the Canon cameras" it contained. When the officer looked in the bag, however, he found only Nikon cameras.

Officer Nadeau then gave defendant *Miranda* warnings; defendant said he understood his rights, but would continue to answer questions. The officer asked him again where he had obtained the camera equipment; this time defendant claimed he had bought it all for $20, but he could not name the seller. The officer placed him under arrest. Robert Hoeven later identified, as stolen from his truck, all the items found with defendant except the knives

and gloves. The logo patch and name tag had been removed from Hoeven's jacket.

The prosecution rested, and defendant moved to prohibit the use of the charged prior conviction of burglary and the uncharged prior conviction of robbery to impeach him if he testified. He contended that section 28(f) is a violation of due process of law insofar as it purports to deprive the court of discretion to exclude prior convictions on the ground of undue prejudice. He therefore asked the court to exercise its discretion despite section 28(f), and to exclude both prior convictions under section 352 and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. Opposing the motion, the prosecutor contended that section 28(f) on its face allows any prior felony conviction to be used for impeachment "without limitation." (Fn. 1, *ante.*) In the alternative, the prosecutor argued that even if the court were to exercise discretion, the prior convictions in this case would be admissible under *Beagle.*

The court ruled that it had no discretion in the matter and was bound by section 28(f) to admit both prior convictions for impeachment if defendant testified. It therefore denied the motion to exclude. Defense counsel then advised the court, "Your Honor, based on the court's ruling, Mr. Collins' intention is not to testify, although he had otherwise intended to, to preclude the jury from finding out about those matters." Defendant rested without calling any witnesses. The jury found him guilty of second degree burglary and not guilty of receiving stolen property, and judgment was entered accordingly. The Court of Appeal affirmed the judgment after modifying the sentence to strike an erroneous enhancement.

## I

The People urge us to adopt the rule announced in *Luce* v. *United States* (1984) 469 U.S. 38 [83 L.Ed.2d 443, 105 S.Ct. 460], i.e., that the denial of a motion to exclude a prior conviction offered for impeachment is not reviewable on appeal if the defendant fails to testify. We shall do so, but only prospectively.

## A

In *Luce* a defendant in a federal criminal trial moved under Federal Rules of Evidence, rule 609(a) (28 U.S.C.), to preclude the prosecution from using a prior conviction to impeach him if he testified.[3] The district court

---

[3]Federal rule 609(a) provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

determined that the conviction was admissible under rule 609(a) and denied the motion; the defendant declined to testify and was convicted. On appeal he contended the ruling was an abuse of discretion, but the circuit court of appeals held it nonreviewable because the defendant had not testified at trial.

The United States Supreme Court affirmed in a unanimous decision, holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." (*Id.* at p. 43 [83 L.Ed.2d at p. 448, 105 S.Ct. at p. 464].) In an opinion by Chief Justice Burger, the court gave at least three reasons for its conclusion. Its primary concern was that "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." (*Id.* at p. 41 [83 L.Ed.2d at p. 447, 105 S.Ct. at p. 463].) First, it stressed that rule 609(a)(1) requires the trial court to weigh the probative value of the conviction against its prejudicial effect, and "To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." (*Ibid.*) Likewise, an appellate court cannot review that balancing process unless the record discloses "the precise nature of the defendant's testimony." In a footnote at this point the court rejected the idea of substituting an offer of proof for the defendant's testimony: "his trial testimony could, for any number of reasons, differ from the proffer." (*Ibid.*, fn. 5.)

Second, the court explained that "Any possible harm" from such an *in limine* ruling is "wholly speculative." To begin with, the trial court has discretion to make a different ruling as the evidence unfolds. Next, when the defendant does not testify, the reviewing court also has no way of knowing whether the prosecution would in fact have used the prior conviction to impeach: if the prosecution's case is strong and the defendant is impeachable by other means, the prosecutor might elect not to use a questionable prior conviction in any event. (*Ibid.*)

Third, when the trial court errs in ruling the conviction admissible the reviewing court cannot intelligently weigh the prejudicial effect of that error if the defendant did not testify. The Supreme Court reasoned that if such rulings were reviewable on appeal, "almost any error would result in the windfall of automatic reversal; the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve Rule 609(a) claims, will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to 'plant' reversible error

in the event of conviction." (*Id.* at p. 42 [83 L.Ed.2d at p. 448, 105 S.Ct. at p. 464].)[4]

■ We recognize that *Luce* is a rule of federal criminal procedure that the Supreme Court adopted pursuant to its advisory power, and hence is not binding on the states. Yet this court has a similar power to adopt rules of criminal procedure when it is necessary to do so. (E.g., *People* v. *Coleman* (1975) 13 Cal.3d 867, 888-897 [120 Cal.Rptr. 384, 533 P.2d 1024]; *People* v. *Rhodes* (1974) 12 Cal.3d 180, 186-187 [115 Cal.Rptr. 235, 524 P.2d 363], and cases cited.) Indeed, in the seminal case on this issue in California, *People* v. *Beagle, supra,* 6 Cal.3d 441, 451-454, we in effect adopted a procedure to guide trial courts in the exercise of their discretion to admit or exclude prior convictions offered for impeachment. In addition, when a federal criminal practice implements or construes a statute or court rule similar to our own and is based on reasons of a practical or policy nature that we find persuasive, we may look to it for guidance in fashioning a rule for California courts. Again *Beagle* is an example: the standards we there adopted were taken directly from a series of federal decisions that construed statutes and rules similar to ours and were premised on rationales we found convincing.

The federal rule of evidence implemented by the *Luce* decision (fn. 3, *ante*) is similar in effect to the provisions of our Evidence Code at issue in *Beagle* and *Castro*. We find the reasons given by the Supreme Court for adopting the *Luce* procedure, discussed above, to be sound and equally applicable to California practice. We are also cognizant of the fact that the *Luce* decision was unanimous (see fn. 4, *ante*), and that the other states that have addressed the matter have been virtually unanimous in adopting the *Luce* rule as their own.[5] For all these reasons we likewise adopt the *Luce* rule as a judicially declared rule of criminal procedure in California.

---

[4]Justices Brennan and Marshall concurred, emphasizing two of the three grounds of the majority holding: "The Court correctly identifies two reasons for precluding appellate review unless the defendant testifies at trial. The careful weighing of probative value and prejudicial effect that Rule 609(a) requires of a district court can only be evaluated adequately on appeal in the specific factual context of a trial as it has unfolded. And if the defendant declines to testify, the reviewing court is handicapped in making the required harmless error determination should the district court's *in limine* ruling prove to have been incorrect." (*Id.* at p. 43 [83 L.Ed.2d at p. 449, 105 S.Ct. at p. 464] [conc. opn. by Brennan, J.].)

[5]*State* v. *Allie* (1985) 147 Ariz. 320 [710 P.2d 430, 437]; *State* v. *Hester* (1985) 145 Ariz. 574 [703 P.2d 518, 520-521]; *State* v. *Garza* (1985) 109 Idaho 40 [704 P.2d 944, 949]; *People* v. *Redman* (Ill.App. 1986) 490 N.E.2d 958, 963; *People* v. *Hartfield* (1985) 137 Ill.App.3d 679 [484 N.E.2d 1136, 1139]; *State* v. *Whitehead* (1985) 203 N.J.Super. 509 [497 A.2d 548, 549]; *State* v. *Utley* (Ohio App. July 19, 1985); *State* v. *Glenn* (1985) 285 S.C. 457 [330 S.E.2d 285, 286]; *State* v. *Means* (S.D. 1985) 363 N.W.2d 565, 569; *State* v. *Eavenson* (Tenn.Crim.App. July 10, 1985); *Vaupel* v. *State* (Wyo. 1985) 708 P.2d 1248, 1249-1250; cf. *People* v. *Clark* (Colo.App. 1985) 705 P.2d 1017, 1020; *State* v. *Chapman* (Me. 1985) 496 A.2d 297, 303; contra, *State* v. *McClure* (1984) 298 Ore. 336 [692 P.2d 579, 584, fn. 4].

■ Defendant's opposition to the *Luce* rule is variously stated, but comes down to a claim that it infringes on the privilege against self-incrimination by making its assertion too costly: after the denial of a pretrial motion to exclude prior convictions, it is argued, a defendant can exercise his right to remain silent at trial only at the price of giving up his right to challenge that ruling on appeal. While superficially plausible, the argument does not withstand analysis.

To begin with, the argument must be dismissed insofar as it is based on the privilege against self-incrimination found in the Fifth Amendment. In its opinion in *Luce* the Supreme Court distinguished two of its decisions relied on by the petitioner therein[6] on the ground that "In those cases we reviewed Fifth Amendment challenges to state-court rulings that operated to dissuade defendants from testifying. We did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions— such as a decision under Rule 609(a)—is reviewable on appeal." (469 U.S. at pp. 42-43 [83 L.Ed.2d at p. 448, 105 S.Ct. at p. 464].) We cannot believe the high court would have unanimously adopted the *Luce* rule if it violated the Fifth Amendment.

Nor does *Luce* violate the California privilege against self-incrimination. (Cal. Const., art. I, § 15.) Defendant relies primarily on two use-immunity cases, *People* v. *Coleman, supra,* 13 Cal.3d 867, and *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789]. *Coleman* held that a probationer's testimony at a probation revocation hearing preceding his criminal trial for the alleged probation violation is inadmissible in that trial; *Ramona R.* reaffirmed the rule that a minor's testimony at a fitness hearing (or statements to a probation officer) are inadmissible in the minor's subsequent criminal trial. These exclusionary rules promote the policies underlying the probation and juvenile justice systems by encouraging probationers and minors to speak on their own behalf at such hearings without fear of giving the prosecution, for use against them in ensuing criminal proceedings, potentially incriminating information that it would not otherwise have had.

The analogy to the case at bar fails for several reasons. First, the "prices" to be paid in the two situations are of a wholly different order of magnitude. *Coleman* and *Ramona R.* were concerned with protecting a fundamental constitutional right—freedom from self-incrimination during a criminal trial; *Luce* risks only the loss of one of the contentions the defendant can raise

---

[6]One of these, *Brooks* v. *Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891], is also relied on by defendant here. At issue in *Brooks* was a statute requiring a defendant who wishes to testify to be the first defense witness.

if he is convicted and decides to appeal—an attack on the denial of his motion to exclude prior convictions for impeachment purposes. Viewed realistically, that contention would not often prevail in any event, as it attempts to show abuse of a highly discretionary power of the trial court. Indeed, many contentions that are far more compelling may also be barred from the appeal on policy grounds (e.g., failure to make prompt and specific objection at trial, failure to raise issue in timely fashion in reviewing court, invited error).

Second, defendant in fact complains of the exact opposite of the dilemma resolved in *Coleman* and *Ramona R.* He charges that the *Luce* rule, rather than burdening his right to testify, burdens his right *not* to testify; also contrary to *Coleman* and *Ramona R.,* he risks exposure not to evidence that he furnishes to the prosecution himself, but only to evidence that the prosecution already has, i.e., his record of prior felony convictions.

Careful reflection on the latter two distinctions, moreover, reveals the fundamental flaw in defendant's position: a defendant who moves to prohibit the use of prior convictions to impeach him if he testifies does not really want the right *not* to testify at his trial; if he did, his motion would be pointless. What he wants, instead, is the right *to testify without being impeached by prior felony convictions.* In the case at bar, for example, defendant candidly told the court he had intended to take the stand but would no longer do so in order "to preclude the jury from finding out about" his two prior convictions.

No witness, however, has the *right* to give testimony immune from such challenge. The procedure of impeaching by proof of prior felony conviction originated at common law, and has long been authorized by our Legislature (now see Evid. Code, § 788). It is settled that such impeachment does not violate the due process clause of either the federal or the state Constitution (*People* v. *Roberts* (1966) 65 Cal.2d 514, 522 [55 Cal.Rptr. 412, 421 P.2d 420]; *People* v. *Harris* (1971) 20 Cal.App.3d 534, 538 [97 Cal.Rptr. 883]), or the federal privilege against self-incrimination (see *McGautha* v. *California* (1971) 402 U.S. 183, 215 [28 L.Ed.2d 711, 731, 91 S.Ct. 1454]). In the latter case the Supreme Court observed that "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. [Citation.] Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." (*Id.* at p. 213 [28 L.Ed.2d at p. 729].) The court went on to explain: "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the

subject matter of his direct examination. [Citations.] It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. [Citations.] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." (*Id.* at p. 215 [28 L.Ed.2d at p. 731].) For the same reasons we hold that impeachment by prior felony conviction does not violate the California privilege against self-incrimination.

■ We conclude that the *Luce* rule, when properly understood, is not inconsistent with any constitutional mandate (accord, *Vaupel* v. *State, supra,* 708 P.2d 1248, 1250), and should be part of the law of this state.

B

It does not follow, however, that the *Luce* rule governs the case at bar. Under our prior decisions on this question a defendant was not required to testify in order to preserve for appeal a claim of improper impeachment by prior conviction; indeed, he was not even asked to make an offer of proof (*People* v. *Fries* (1979) 24 Cal.3d 222, 232-234 [155 Cal.Rptr. 194, 594 P.2d 19]). And no such sweeping procedural change was stated or implied in either Proposition 8 or its supporting ballot materials. Thus our decision to adopt the *Luce* requirement establishes a new rule of law when there was a previous rule in this state to the contrary; in such circumstances we have the option of giving it prospective effect on policy grounds. (*People* v. *Guerra* (1984) 37 Cal.3d 385, 399-406 [208 Cal.Rptr. 162, 690 P.2d 635].)

Considerations of fundamental fairness compel us to exercise that option. To deny defendants their right to appeal on this issue because they failed to testify—after we repeatedly told them they need not do so—would be to change the rules after the contest was over. When the contest is as serious as a criminal prosecution, such unfairness would be intolerable. For this reason the *Luce* rule will apply only prospectively to trials beginning after this decision is final. (Accord, *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 712-716 [135 Cal.Rptr. 392, 557 P.2d 976] [new rule that review of orders certifying juveniles for prosecution as adults will be deemed waived unless defendant files a timely petition for extraordinary writ, held prospective only].)

The Ninth Circuit Court of Appeals recently so held, declaring that to apply *Luce* retroactively would be "grossly unfair" and would "wreak a

substantial inequity." (*United States* v. *Givens* (9th Cir. 1985) 767 F.2d 574, 578.) The court explained that "we refuse to impose subsequently-created requirements for preserving a claim on appeal on a defendant who did all that was necessary to comply with the law applicable at the time of his trial. By doing so, we avoid ""the brutal absurdity of commanding a man today to do something yesterday."'"" (*Id.* at p. 579.) The United States Supreme Court denied certiorari. (— U.S. — [88 L.Ed.2d 304, 106 S.Ct. 321].)

## II

◼ We turn therefore to the procedure to be followed by appellate courts in applying *Castro* to cases tried before the date of that decision and still pending before them. The issue is presented in each case in which (1) the defendant was charged with a crime committed on or after June 9, 1982,[7] (2) the prosecution proposed to impeach the defendant with proof of one or more prior felony convictions if he testified,[8] (3) the defendant moved for an order excluding those convictions in the exercise of the trial court's discretion under section 352, and (4) the court denied the motion without exercising its discretion because it deemed itself bound to admit the convictions by section 28(f).[9]

1. The appellate court should first decide whether the prior convictions are (1) admissible or excludable in the trial court's discretion or (2) inadmissible as a matter of law. Under *Castro* the trial courts have broad discretion to admit or exclude prior convictions for impeachment purposes, and must exercise that discretion on motion of the defendant. The discretion is as broad as necessary to deal with the great variety of factual situations in which the issue arises, and in most instances the appellate courts will uphold its exercise whether the conviction is admitted or excluded.

In three instances, however, the appellate court will hold such a conviction to be inadmissible as a matter of law. To begin with, a conviction is inadmissible under *Castro* if it does not necessarily involve moral turpitude.

---

[7]Section 28(f) does not apply to prosecutions for crimes committed before that date. (*People* v. *Smith* (1983) 34 Cal.3d 251, 257-263 [193 Cal.Rptr. 692, 667 P.2d 149].)

[8]As we observed in *Castro* (38 Cal.3d at p. 306), the issue is also presented when the prosecution proposes to impeach a witness other than the defendant. (See, e.g., *People* v. *Woodard* (1979) 23 Cal.3d 329, 337-339 [152 Cal.Rptr. 536, 590 P.2d 391].) Our analysis thus applies equally to cases in which the prior conviction was offered to impeach a nonparty witness. (But see fn. 18, *post.*)

[9]In all cases in which the court denied the motion before the date of *Castro* we may fairly presume that it deemed itself bound by the "impeachment without limitation" language of section 28(f). That presumption will be dispelled only if the trial court made a clear statement on the record that it was denying the motion in the exercise of its discretion.

(38 Cal.3d at p. 317.) Whether a conviction involves such turpitude is a question of law; its answer depends on the elements of each crime in the abstract, rather than the underlying facts of the earlier prosecutions. (*Id.* at pp. 316-317; cf. *People* v. *Burroughs* (1984) 35 Cal.3d 824, 829-830 [201 Cal.Rptr. 319, 678 P.2d 894] [same test for determining whether a felony is "inherently dangerous to human life" for purposes of second degree felony-murder rule].)[10] Second, even if it involves moral turpitude a prior conviction is also inadmissible as a matter of law in unusual cases in which the appellate court concludes on the particular facts before it that the trial court could have exercised its discretion only in favor of exclusion, i.e., that it would have been an abuse of discretion if the trial court had admitted the conviction. Third, a prior conviction is occasionally inadmissible because it loses felony status by operation of law. (E.g., Pen. Code, § 17, subd. (c) [felony-misdemeanor conviction of a minor resulting in commitment to Youth Authority].)

In most instances, accordingly, the appellate court will hold that the trial court committed *Castro* error in failing to exercise its discretion to admit or exclude the challenged prior convictions (38 Cal.3d at p. 317), and/or in admitting convictions that are inadmissible as a matter of law (*ibid.*).[11]

The procedure for determining whether the *Castro* error is prejudicial depends on whether the defendant did or did not testify after the denial of his motion to exclude.

## A

2. If the defendant did testify, the appellate court should make a preliminary determination of the probable effect of the prior convictions, taken together, on the outcome of the trial. The purpose is to screen out those cases in which the admission of the prior convictions probably did not harm the defendant in any event. The appellate court is able to make this determination because it need not speculate on what the defendant's testimony would have been: the record discloses the content of both the direct testimony of the defendant and any cross-examination of or rebuttal to that testimony. The court can therefore assess the probable effect of the impeachment on that testimony. In turn, the court can appraise the probable effect of that

---

[10]If the conviction would have been admissible even before the adoption of section 28(f) because the immoral trait it evidences is dishonesty—e.g., when the felony is theft, forgery, bribery, or perjury—the inquiry need proceed no further: such a conviction is ipso facto admissible under the broader standard of *Castro*. (Cf. 38 Cal.3d at p. 317, fn. 13.)

[11]In unusual cases the appellate court may conclude on the facts not only that none of the prior convictions is inadmissible as a matter of law but also that none could have been excluded without abuse of discretion. In that event the court may hold there was no *Castro* error.

testimony on the verdict, taking into account such factors as the strengths and weaknesses of the prosecution's case, the nature of the defense, and the potential persuasive force of the defendant's testimony in light of the other evidence put before the jury. In appropriate cases the court may also consider such factors as whether the defendant was the sole—or even a primary—defense witness on an important issue in the case, or conversely, whether the defendant's testimony was essentially cumulative to that of witnesses who testified on his behalf. "

If the appellate court concludes it is reasonably probable that a result more favorable to the defendant would *not* have been reached in the absence of the *Castro* error—i.e., that the admission of the prior convictions did not change the outcome—it should hold the error harmless.[12] In all other cases the question of prejudice turns on whether the trial court would have admitted or excluded the prior convictions over which it had discretion. In such cases, however, the appellate court should not speculate on how the trial court would have exercised its discretion. Rather, it should reverse the judgment for the limited purpose of remanding the cause to the trial court with directions to exercise its discretion in the matter. (See *People v. Bustamante* (1981) 30 Cal.3d 88, 103 [177 Cal.Rptr. 576, 634 P.2d 927], and cases cited.)[13]

3. The directions should inform the trial court of its dispositional alternatives. The court should first be directed to rule on whether it would have excluded any of the prior convictions in the exercise of its discretion.[14] The factors that the trial court should consider in exercising that discretion are, to begin with, those noted in *People v. Beagle, supra,* 6 Cal.3d at pages 453-454. Properly understood, those factors remain relevant to any application of section 352 even after the adoption of section 28(f).

In *Beagle* we specifically warned that "We do not purport to establish rigid standards to govern that which in each instance must depend upon the

---

[12]Although stated negatively, this is the familiar test of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. A higher standard of review may be required if the defendant waives his right to trial by jury because of *Castro* error. A defective waiver of the right to jury trial is reversible per se. (E.g., *People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583].) The appellate court should therefore consider whether the same rule applies when a defendant is induced to waive such right by an erroneous decision to allow his impeachment by prior conviction.

[13]In its opinion the appellate court should also rule on any other issues raised by the defendant. :

In unusual cases the appellate court may conclude that the admission of one or more prior convictions that are inadmissible as a matter of law caused prejudice regardless of how the trial court might exercise its discretion as to other convictions. In that event the appellate court need not remand the cause but may itself hold the error prejudicial.

[14]The court should not exercise its discretion, of course, as to any conviction that the appellate court held inadmissible as a matter of law. (See par. 1, *ante.*)

sound exercise of judicial discretion." (*Id.* at p. 453.) We then noted only "the more important factors" to be considered in that inquiry, quoting the now-familiar four considerations taken from the federal cases. (*Ibid.*) As we explained in *Castro,* however, a line of cases beginning with *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], was thereafter perceived as transforming the *Beagle* guidelines into rigid limitations on trial court discretion, and that development became the principal target of the drafters of section 28(f). (38 Cal.3d at p. 308.) After reviewing the wording and history of section 28(f), the lead opinion in *Castro* concluded that "The intention of the drafters of the initiative was to restore trial court discretion as visualized by the Evidence Code and to reject the rigid, black letter rules of exclusion which we had grafted onto the code by the *Antick* line of decisions." (*Id.* at p. 312.) In so holding the lead opinion meant that "trial court discretion as visualized by the Evidence Code" would be "restored" by returning to the view of section 352 taken in *Beagle,* i.e., that the four factors mentioned in that case should be considered as guiding rather than restraining the discretion of trial courts in applying section 352 to prior convictions offered for impeachment.[15] Once a trial court has considered such of the four factors as may be shown by the evidence, however, nothing in *Beagle* prevents the court from also taking into account any other circumstances of the case that may be relevant to the issue.

If the trial court finds that it would have admitted all the prior convictions over which it had discretion—and there are no convictions inadmissible as a matter of law—it should rule the error harmless. It should then reinstate the judgment by rearraigning the defendant and pronouncing judgment anew.[16] If the court finds that it would have excluded one or more prior convictions, it should weigh prejudice under the *Watson* test by determining whether it is reasonably probable that the erroneous admission of such convictions affected the result. If the court finds no prejudice it should reinstate the judgment; from this judgment the defendant can appeal (Pen. Code, § 1237, subd. (a)). If the court finds prejudice, it should order a new trial; from this order the People can appeal. (*Id.,* § 1238, subd. (a)(3)).[17]

---

[15]This was in fact the view of six members of the court in *Castro.* In her concurring and dissenting opinion the Chief Justice, joined by Justice Reynoso, agreed that the *Beagle* factors should "continue to guide the trial courts in their exercise of that discretion." (38 Cal.3d at p. 323.) And in his concurring and dissenting opinion Justice Grodin likewise stated that he assumed trial courts are "to be guided by the four factors enunciated in *Beagle*" (*id.* at p. 320).

[16]No appeal will lie from the judgment in that event, because the appellate court will already have decided that the trial court could either admit or exclude such prior convictions without abuse of discretion.

[17]In either case the appeal will be limited to the issue of prejudice. (See fn. 16, *ante.*)

B

4. The second category of cases is composed of those—like the case at bar—in which the defendant did not testify after the denial of his motion to exclude. In that event the appellate court does not know what the defendant's testimony would have been, and hence has no way of assessing the probable effect of the error on the verdict. Rather than speculating on the matter, however, in all such cases the court should reverse the judgment and remand the cause to allow the trial court not only to exercise its discretion but also to determine prejudice in the first instance.

Defendant contends the reviewing court should not merely remand the cause but should order a new trial in all cases in which the defendant does not testify. Before the adoption of section 28(f) we reasoned that because the reviewing court did not know what the defendant would have said if he had taken the stand, it had no basis for concluding that his testimony would *not* have affected the result and hence the conviction was per se a miscarriage of justice within the meaning of the Constitution. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 130 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Spearman* (1979) 25 Cal.3d 107, 118-119 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Fries, supra,* 24 Cal.3d 222, 233-234; *People* v. *Rist* (1976) 16 Cal.3d 216, 223 [127 Cal.Rptr. 457, 545 P.2d 833].) Here, by contrast, we deal with appeals from trials held after section 28(f) was adopted but before we construed it in *Castro.* To apply a similar rule of reversal per se to such appeals would grant unwarranted retrials in cases in which there was actually no prejudice, i.e., in which a trial court that denied a motion to exclude because it deemed all prior convictions automatically admissible under section 28(f) would have correctly denied the motion anyway if it had construed section 28(f) as we did in *Castro.* The remand procedure we adopt will identify those cases and thus prevent needless retrials.

5. Upon remand the trial court should first direct the defendant to make an offer of proof as to what his testimony would have been if he had taken the stand. (See *People* v. *Jackson* (1974) 37 Cal.App.3d 496, 499-500 [112 Cal.Rptr. 411].) In the absence of trial testimony by the defendant, such an offer will give the court the information it needs to answer the essentially factual questions posed by the remand, i.e., whether the prejudicial effect of the prior convictions would have outweighed their probative value, and if so, whether a more favorable verdict would have been reasonably probable if the defendant had taken the stand and told his story without fear of impeachment by such convictions.

Defendant contends that the hearing at which he makes this offer of proof must be held in camera, i.e., in the absence of the prosecutor. We adopt

such a procedure for this case and similar cases tried before *Castro* because of a constitutional concern raised in *People v. Fries, supra,* 24 Cal.3d 222, 233. The court there expressed the view that to require such an offer of proof would infringe on the defendant's privilege against self-incrimination under the California Constitution by compelling him to reveal his defense to the prosecution before trial. To eliminate that risk in cases such as this, the trial court should hear the offer of proof in camera and should seal the record of the hearing for the use of the appellate court.[18] Yet the court should also take steps to minimize the negative effects of the exclusion of the prosecutor from the hearing. Thus before the hearing the prosecutor should be permitted to serve and file a brief summary of the evidence introduced at trial; the defendant should be required to make his offer personally and under oath (cf. *People v. Keith* (1981) 118 Cal.App.3d 973, 982 [173 Cal.Rptr. 704]); and the court may refer to the prosecutor's summary in testing the defendant's story.[19]

6. The trial court should next rule in open court on whether it would have excluded any of the prior convictions in the exercise of its discretion.[20] (See also fn. 14, *ante*.) If the court finds that it would have admitted all such convictions—and there are no convictions inadmissible as a matter of law—it should rule the error harmless and reinstate the judgment.[21] If the court finds that it would have excluded one or more prior convictions, it should weigh prejudice under the *Watson* test by determining whether it is reasonably probable that the error in ruling such convictions admissible affected the result. If the court finds no prejudice it should reinstate the

---

[18]The hearing need not be held in camera if the witness is not the defendant.

The procedure we here adopt will not necessarily govern cases tried after *Castro*. In particular, we express no opinion whether, if a defendant chooses to make such an offer of proof in those cases, it must be heard in camera.

[19]In lieu of this procedure, the prosecutor may elect to participate in the hearing upon stipulating in writing that if the judgment is vacated by the trial court or reversed by the appellate court, the case cannot be retried but must be dismissed with prejudice.

[20]In so ruling the court must avoid disclosing to the prosecution, either directly or indirectly, the content of the defendant's offer of proof. Courts exercise similar care in other proceedings that follow in camera hearings. (E.g., Pen. Code, § 987.9; *Keenan v. Superior Court* (1982) 31 Cal.3d 424, 428, fn. 5 [180 Cal.Rptr. 489, 640 P.2d 108].)

The sequence of these two hearings—i.e., the offer of proof before the discretionary ruling—serves the interest of fairness. Inasmuch as motions to exclude prior convictions for impeachment purposes are often made *in limine*, trial courts usually rule on such motions without knowing the specifics of either the prosecution's case or the defense. But in the present context of reversal and remand the trial court will always have been exposed to the prosecution's case—and know it persuaded the jury—before making the delayed *Castro* ruling we now require. In some cases that knowledge might unconsciously affect the outcome. The best that can be done to redress the balance is to ensure that the trial court at least has the benefit of the defendant's offer of proof before making its ruling.

[21]No appeal will lie from the judgment in that event. (See fn. 10, *ante*.)

judgment, subject to an appeal by the defendant; if the court finds prejudice it should order a new trial, subject to an appeal by the People.[22]

### III

Applying this procedure to the case at bar, we determine first whether the two prior convictions challenged in defendant's motion to exclude—burglary and robbery—are inadmissible as a matter of law because they do not necessarily involve moral turpitude. To answer this question we look to the elements of each crime. (See par. 1, *ante*.) Burglary is committed by every person "who enters any house [or other structure or vehicle listed in the statute] . . . with intent to commit grand or petit larceny or any felony" (Pen. Code, § 459). An intent to commit larceny evidences a willingness to act dishonestly, and ipso facto reflects on the witness's credibility. (*Castro,* 38 Cal.3d at pp. 313-315; see also fn. 12, *ante*.) Although an intent to commit "any felony" includes both felonies that necessarily involve moral turpitude and felonies that do not, the distinction is immaterial for present purposes: whether or not the target felony itself evidences a moral defect, burglary remains in all cases the fundamentally deceitful act of entering a house or other listed structure with the secret intent to steal or commit another serious crime inside. A felony conviction of such an act demonstrates a "readiness to do evil" and hence necessarily involves moral turpitude.[23] (See, e.g., *People* v. *Statler* (1985) 174 Cal.App.3d 46, 53-54 [219 Cal.Rptr. 713]; *People* v. *Knowlden* (1985) 171 Cal.App.3d 1052, 1056-1057 [217 Cal.Rptr. 758].)

Robbery is defined as the taking of property from the person of another, against his will, by force or fear. (Pen. Code, § 211.) It is thus larceny aggravated by an assault (*People* v. *Butler* (1967) 65 Cal.2d 569, 572 [55 Cal.Rptr. 511, 421 P.2d 703]), and is likewise a felony that necessarily involves moral turpitude. (See, e.g., *People* v. *Brown* (1985) 169 Cal.App.3d 800, 804-806 [215 Cal.Rptr. 494].)

On the facts of this case we further hold that the trial court could have admitted or excluded either prior conviction without abuse of discretion.

[22]In either case the appeal will be limited to the issue of prejudice. (See fn. 16, *ante*.)

We recognize that the People's role in such an appeal will be severely limited by their lack of knowledge of the content of the defendant's offer of proof. Yet their position is no different from that of a defendant who seeks review, for example, of an order denying his motion to disclose the identity of a confidential informer following an in camera hearing from which the defendant and his counsel were excluded. (Evid. Code, § 1042, subd. (d).) In both cases the parties must do the best they can with the information they have, and the appellate court will fill the gap by objectively reviewing the whole record.

[23]The act is no less turpid—indeed, it may be more—if the entry is by deceit (see *People* v. *Deptula* (1962) 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430], and cases cited) rather than by force.

The convictions are therefore not inadmissible as a matter of law, and the court committed *Castro* error in declining to exercise its discretion in the matter.

The judgment of the Court of Appeal is reversed with directions to reverse the judgment of the trial court with directions to follow the procedure set forth in paragraphs 5 and 6 of this opinion.

Robie (Ronald B.), J.,* concurred.

**LUCAS, J.**—I concur in the judgment, but only under the compulsion of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], a case in which I dissented. (See *id.* at p. 322.) The majority's complicated review and remand procedure would be entirely unnecessary if in *Castro* we had followed the clear intent underlying Proposition 8 and held that *all* prior convictions are admissible "without limitation" for impeachment purposes.

Nonetheless, given *Castro's* holding, the majority's present remand procedure appears a satisfactory way to determine whether any prejudicial error has occurred. Certainly, such a remand is preferable to a rule of per se reversal for *Castro* error. In addition, with respect to future cases, I fully concur with part I of the majority opinion which adopts the rule of *Luce* v. *United States* (1984) 469 U.S. 38 [83 L.Ed.2d 443, 104 S.Ct. 460], that denial of a motion to exclude a prior conviction is not reviewable on appeal unless the defendant took the stand to testify in his defense.

**GRODIN, J.,** Concurring.—I thought this court was wrong in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], when it held that trial court discretion to exclude prior felony convictions for purposes of impeachment survived Proposition 8 (see my conc. & dis. opn., *id.*, at pp. 319-322), and I still think so. Like the trial court in this case— and most others, judging from the number of cases on appeal which involve "*Castro* error"[1]—the language and intent of the initiative in this respect seemed to me quite clear.

I agree with former Chief Justice Traynor, however, that once a dissenter has expressed his views "he has had his day. He should yield to the obligation that is upon him to live with the law as it has been stated. He may thereafter

---

*Judge, Sacramento Municipal Court, assigned by the Chairperson of the Judicial Council.

[1]At latest count there are 27 cases in which we have granted hearing or review pending decision in this matter—an all-time record for "grant-and-holds."

properly note that he is concurring under compulsion . . . but he should regard dearly enough the stability of the law that governs all the courts in the state not to renew the rataplan of his dissent." (Traynor, *Some Open Questions on the Work of State Appellate Courts* (1957) 24 U.Chi.L.Rev. 211, 219.)

Accordingly, and under compulsion of this court's decision in *Castro*, I agree that the trial court erred in failing to exercise its discretion under Evidence Code section 352 with respect to the admissibility of defendant's prior conviction for purposes of impeachment. I agree also, though with some reservations as to dicta,[2] with the remand procedure which the court now adopts for this and similar cases that have been tried with "*Castro* error." Finally, though again with some reservations as to the analysis,[3] I agree with the court's adoption of the *Luce* procedure for future cases.

**BROUSSARD, J.,** Concurring and Dissenting.—I concur in all parts of the majority opinion except its assertion that future appeals should be governed by the rule of *Luce* v. *United States* (1984) 469 U.S. 38, 42 [83 L.Ed.2d 443, 448, 105 S.Ct. 460, 464]. The *Luce* rule provides that a defendant cannot challenge on appeal an erroneous ruling admitting prior convictions for purpose of impeachment unless he has testified, and suffered impeachment, before the jury trying his case. The primary purpose of the rule is to provide the appellate court with a record sufficient to enable it to assess the prejudicial effect of the trial court's ruling. That goal, however, can be achieved in a way less destructive of defendant's rights: by permitting defendant to testify outside of the presence of the jury.

When a trial court rules that it will permit a prior conviction to be used for impeachment, the defendant faces a dilemma. As we explained in *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], "[i]f a defendant testifies and is impeached by means of a prior felony conviction, there is a widely acknowledged danger that this evidence will be misused by the trier of fact. 'Despite limiting instructions, the jury is likely to

---

[2]Unlike the majority, I would reserve decision as to whether appeal will lie from a judgment rendered after determination that *Castro* error was harmless (*ante*, p. 392, fn. 16) or as to the scope of appeal if the court finds prejudice (*ante*, p. 392, fn. 17).

[3]Rather than suggesting that a defendant has no "right" to give testimony immune from impeachment by unduly prejudicial prior convictions (see *ante*, p. 387), I believe it may be more accurate to say that the state has a legitimate interest in prescribing the procedure by which the defendant may have such a "right" enforced or implemented, and that the Constitution does not prohibit the state from requiring the defendant to take the witness stand in order to invoke the right at issue here. (See generally Westen & Mandell, *To Talk, To Balk, or To Lie: The Emerging Fifth Amendment Doctrine of the "Preferred Response"* (1982) 19 Am.Crim.L.Rev. 521, 550-552.) As the court notes (*ante*, pp. 384-385), in *Luce* the United States Supreme Court enumerated a number of compelling reasons that support such a procedural requirement. (*Luce* v. *United States* (1984) 469 U.S. 38, 40-43 [83 L.Ed.2d 443, 447-448, 105 S.Ct. 460, 463-464].)

consider this evidence for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity.' (*People v. Antick* [1975] 15 Cal.3d [79,] 97 [23 Cal.Rptr. 475, 539 P.2d 43].) As the United States Supreme Court has noted in a related context, evidence of a 'defendant's prior trouble with the law . . . is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.' (*Michaelson* v. *United States* (1948) 335 U.S. 469, 475-476 [93 L.Ed. 168, 173-174, 69 S.Ct. 213].)" (24 Cal.3d at pp. 227-228; see *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883]; McCormick, Evidence (2d ed. 1972) § 43.)

On the other hand, if a defendant elects not to testify to keep evidence of prior convictions from the jury, he foregoes the opportunity personally to persuade the jury of his innocence, and risks that the jury will infer that his failure personally to explain or deny evidence against him arises from his inability to do so. (*People* v. *Fries, supra,* 24 Cal.3d 222, 228-229.) Despite these drawbacks, however, the effect of proof of prior convictions can be so devastating that not testifying may be the wisest course of action—perhaps the only course that will permit trial by an impartial jury.

The *Luce* rule exacerbates this dilemma. Under that rule a defendant who elects not to testify also loses the right to challenge the trial court's ruling on appeal. A defendant must choose between trial before a jury prejudiced against him as a result of the improper admission of impeaching convictions, or an appeal before a court which will not hear his claim that the ruling below was erroneous.

The *Luce* decision asserts that review of defendant's testimony is essential so that the appellate court can determine whether the trial court erred in deciding to admit the impeaching testimony, and whether that error is prejudicial. Creating a record for appellate review, however, does not require that defendant testify and submit to impeachment before the trier of fact. Such a record could be created by having defendant testify in camera after the prosecution has concluded its case. Such testimony could be subject to cross-examination, and, while not literally binding on defendant, could be used to impeach any inconsistent testimony later offered at trial. This is a heavy burden to put on a defendant to preserve an issue for appeal, but it is still much less onerous than requiring him to submit to impeachment by proof of prior convictions in front of the jury which will decide his guilt or innocence.

In short, the *Luce* rule is an oppressive one, putting a defendant to a forced choice between prejudicing his right to a fair trial or his right to

appeal. The majority maintain that such consequences do not reach the level of a constitutional violation, but they are serious enough that we should not adopt the rule unless there are compelling reasons for doing so. Those reasons advanced by the *Luce* court and endorsed by the majority—to facilitate appellate review of issues of error and prejudice—are not sufficient since a suitable record can be obtained by in camera testimony without introducing prejudicial impeaching evidence before the jury. I therefore dissent from the majority's conclusion that *Luce* should govern review of future cases.

Bird, C. J., and Reynoso, J., concurred.

Appellant's petition for a rehearing was denied September 10, 1986. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.