Filed 5/17/24  P. v. Velasquez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAMIAN I. VELASQUEZ,<br><br>    Defendant and Appellant. | D082765<br><br><br>(Super. Ct. No. SCD296061) |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General for Plaintiff and Respondent.

# I

## INTRODUCTION

Damian I. Velasquez appeals a judgment of conviction after a jury found him guilty of one count of carjacking (Pen. Code, § 215, subd. (a); count 1),[1] one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), and one count of unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a); count 3).  He contends the trial court erred by ruling in limine that the prosecution could impeach him with a prior felony conviction if he elected to testify at trial.  The People claim Velasquez's argument is barred because he voluntarily waived his right to testify.  We agree with the People.  Therefore, we affirm the judgment.

# II

## BACKGROUND

### A. *Factual Background*

R.M. drove his pickup truck to a credit union in National City to make a loan payment.  While he was in the parking lot, he met and struck up a conversation with Louie Granados.  At one point during the conversation, Granados said he had a friend who knew a lot of women.  He offered to introduce R.M. to the friend and R.M. agreed to meet him.

R.M. and Granados got into R.M.'s truck and drove to a motel.  There, the men met with Granados' friend, Velasquez, who said he knew women in downtown San Diego.  R.M., Velasquez, and Granados got into R.M.'s truck, bought alcohol, picked up a female companion, and drove towards downtown.  R.M. sat in the driver seat, Velasquez sat in the front passenger seat, and Granados and the female companion sat in the backseat.

---

[1]    Further undesignated statutory references are to the Penal Code.

They drove around downtown for a while and Velasquez eventually said they would not be able to meet up with anyone else. He also pulled out and lit a glass pipe, which made R.M. think he needed to get everyone out of his truck. R.M. pulled the truck over and asked the occupants whether they wanted him to drop them off downtown or elsewhere. According to R.M., Velasquez "blew up" and punched him several times. R.M. opened the driver-side door and exited the truck. Velasquez slid into the driver seat and sped off in the truck, leaving R.M. behind.

That evening, law enforcement surveilled the motel where R.M. and Granados had met with Velasquez earlier in the day. There, they apprehended Velasquez and recovered R.M.'s truck.

B. *Procedural Background*

Velasquez and Granados were charged by amended information with carjacking, assault by means of force likely to produce great bodily injury, and unlawfully taking and driving a vehicle. Velasquez was also charged with receipt of a stolen vehicle (§ 496d; count 4). The amended information alleged that, in the commission of the carjacking and assault charges, Velasquez personally inflicted great bodily injury on R.M. (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a).)

Before trial, the prosecution and Velasquez filed competing motions in limine concerning the admissibility of two prior federal convictions suffered by Velasquez. The prosecution asked the court for permission to impeach Velasquez, if he elected to testify, with evidence that he suffered: (1) a misdemeanor conviction for being an accessory after the fact in violation of Title 18 United States Code section 3 (*United States v. Velasquez*, Case No. 18-CR-4602); and (2) a felony conviction for aiding and abetting the bringing of an alien into the United States without presentation to an immigration

3

official in violation of Title 8 United States Code section 1324(a)(2)(B)(iii) (*United States v. Velasquez*, Case No. 19-CR-02207).[2] In his motion in limine, Velasquez argued the prior convictions were not proper impeachment evidence because, according to Velasquez, they were for crimes that did not involve moral turpitude; thus, the convictions were not relevant to his veracity as a witness. He also argued the court should exclude the prior felony conviction under Evidence Code section 352.

At a pretrial hearing, the trial court tentatively ruled it would exclude the misdemeanor conviction and admit the felony conviction as impeachment evidence. The court expressed uncertainty whether the felony conviction involved a crime of moral turpitude, but it nonetheless found the conviction was "very recent" and "probative." At the request of the defense, the court instructed the parties to "sanitize" the facts of the felony conviction at trial by referring to it as a conviction for "a federal felony crime, date of conviction October 28, 2019." Upon our review of the record, there appears to be no indication that Velasquez's counsel advised the court that Velasquez would refrain from testifying at trial due to the court's in limine ruling.

The case proceeded to an eight-day jury trial. At the end of the prosecution's case in chief, Velasquez voluntarily waived his right to testify.

The jury ultimately found Velasquez guilty of the carjacking, assault, and taking and driving a vehicle charges. It also found true the allegations that Velasquez personally inflicted great bodily injury on R.M. The jury did

---

2    Velasquez's motion to augment the record with the docket and court filings from the federal case in which he suffered his felony conviction is denied, as the docket and court filings were not part of the record in the trial court. (*People v. Brooks* (1980) 26 Cal.3d 471, 484 ["Augmentation is not available ... for the purpose of adding material that was not a proper part of the record in the trial court."].) However, his alternative request for judicial notice of these materials is granted. (Evid. Code, § 452, subd. (d).)

4

not return a verdict on the receipt of a stolen vehicle charge because it found Velasquez guilty of unlawfully taking and driving R.M.'s vehicle.[3]

In a bifurcated proceeding, Velasquez admitted the aggravating circumstance that his prior performance while on probation, mandatory supervision, post-release supervision, and/or parole was unsatisfactory. The court sentenced him to an aggregate term of eight years in prison, consisting of the mid-term of five years for the carjacking conviction and three years for the great-bodily-injury enhancement. The court stayed execution of mid-term sentences for the remaining convictions pursuant to section 654.

III

DISCUSSION

Velasquez's sole appellate contention is that the trial court's in limine ruling forced him into an untenable dilemma of choosing whether to refrain from testifying, on the one hand, or to testify under the threat of impermissible impeachment, on the other hand. He asserts this error violated state law and his federal constitutional right to testify on his own behalf. Velasquez acknowledges the United States Supreme Court and the California Supreme Court have both adopted a rule—commonly known as the *Luce* rule—requiring a defendant to testify in order to preserve an appellate challenge to an in limine ruling admitting a prior conviction for impeachment. But he argues the *Luce* rule does not bar his challenge, despite his failure to testify, because it is not a well-founded rule, it has been eroded by recent caselaw, and it does not apply to the facts of the present case. We reject these arguments and conclude the *Luce* rule bars Velasquez's challenge to the trial court's in limine ruling.

---

[3]    The same jury found codefendant Granados not guilty of all three charges pending against him.

In *Luce v. United States* (1984) 469 U.S. 38 (*Luce*), the defendant moved in limine to preclude the admission of a prior state conviction and the federal district court ruled the prior conviction was admissible impeachment evidence under former Federal Rules of Evidence rule 609(a)(1).[4] On appeal, the United States Supreme Court unanimously held that the defendant could not challenge the district court's in limine ruling because, in order "to raise and preserve for review [a] claim of improper impeachment with a prior conviction, a defendant must testify" at trial. (*Luce,* at p. 43.)

The *Luce* court cited three justifications for this rule. First, it held that a "court must know the precise nature of the defendant's testimony" to "rule on subtle evidentiary questions," including when it weighs the probative value of a prior conviction against its prejudicial effect; however, such information "is unknowable when ... the defendant does not testify ...." (*Luce, supra*, 469 U.S. at p. 41.) Second, the *Luce* court reasoned, "[a]ny possible harm flowing from a[n] ... *in limine* ruling permitting impeachment by a prior conviction is wholly speculative" without a defendant's testimony because an appellate court cannot know whether the trial court would have exercised its judicial discretion to revisit and alter its prior in limine ruling, or whether the prosecution would have "elect[ed] not to use [the] arguably inadmissible prior conviction" at trial. (*Id.* at pp. 41–42.) Third, the *Luce* court concluded that, absent a rule requiring a defendant to testify, "almost any error would result in the windfall of automatic reversal; the appellate court could not

---

4    Federal Rules of Evidence rule 609(a) provides, in relevant part, "The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction: [¶] (1) for a crime that ... was punishable by death or by imprisonment for more than one year, the evidence: ... [¶] (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant ...." (Fed. Rules Evid., rule 609(a)(1)(B).)

logically term 'harmless' an error that presumptively kept the defendant from testifying. Requiring that a defendant testify ... enable[s] the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it ... also tend[s] to discourage making such motions solely to 'plant' reversible error in the event of conviction." (*Id.* at p. 42.)

The California Supreme Court adopted the *Luce* rule prospectively in *People v. Collins* (1986) 42 Cal.3d 378 (*Collins*). The *Collins* court recognized that, although "*Luce* is a rule of federal criminal procedure that the [United States] Supreme Court adopted pursuant to its advisory power," the California Supreme Court "has a similar power to adopt rules of criminal procedure" and "may look to [federal criminal practice] for guidance in fashioning a rule for California courts" when the federal practice implements or construes a state or court rule similar to one in effect in California. (*Id.* at p. 385.) The court determined the federal rule of evidence implemented in *Luce* was "similar in effect to the provisions of our Evidence Code" (namely, Evidence Code section 352), and "the reasons given by the Supreme Court for adopting the *Luce* procedure ... [are] sound and equally applicable to California practice." (*Collins,* at p. 385.) Further, it noted "the *Luce* decision was unanimous ... and ... other states that have addressed the matter have been virtually unanimous in adopting the *Luce* rule as their own." (*Ibid.*) For all these reasons, the *Collins* court "likewise adopt[ed] the *Luce* rule as a judicially declared rule of criminal procedure in California." (*Ibid.*)

Velasquez offers three reasons why the *Luce* rule does not, or should not, apply here. First, he claims our state's adherence to the *Luce* rule should be revisited because the *Luce* rule compels a defendant to make an "unfair choice"—either testify under the threat of impeachment by means of a potentially irrelevant conviction or, alternatively, refrain from testifying and

7

waive an appellate challenge to the trial court's in limine admission of the impeachment evidence. Relatedly, he contends the *Luce* rule's justifications simply are not "persuasive." These arguments have no bearing here. In *Collins*, the California Supreme Court adopted the *Luce* rule as a rule of state criminal procedure (*Collins, supra*, 42 Cal.3d at p. 385), and we are bound to follow its decision under principles of stare decisis. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456 (*Auto Equity*).)

Second, Velasquez contends the *Luce* rule stands in tension with cases post-dating *Collins*, which, according to Velasquez, have allowed defendants to challenge other types of trial errors on appeal, even when it might be difficult to assess the prejudice resulting from the claimed errors. We are not persuaded that these procedurally distinguishable cases demonstrate an erosion of the *Luce* rule in California.[5] In the decades since *Collins*, the California Supreme Court has never reconsidered or backtracked on its adoption of the *Luce* rule. On the contrary, it has repeatedly and unequivocally reaffirmed that the *Luce* rule remains a rule of criminal procedure in our state, including in at least one case post-dating the decisions on which Velasquez relies. (See *People v. Duong* (2020) 10 Cal.5th 36, 57 [it is "settled jurisprudence that defendant must testify to preserve a challenge to the court's tentative ruling on impeachment"]; see also *People v. Ledesma* (2006) 39 Cal.4th 641, 731 ["It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify."]; *People v. Sims* (1993) 5 Cal.4th 405, 456

---

[5] Velasquez relies on *People v. Rodas* (2018) 6 Cal.5th 219, which reversed a lower court ruling that allowed trial to proceed despite defense counsel declaring a doubt as to the defendant's competence, and *United States v. Gillenwater* (9th Cir. 2013) 717 F.3d 1070, which held the defendant was deprived of the constitutional right to testify at a competency hearing.

["because defendant elected not to testify at his trial, his objections to the trial court's *in limine* ruling may not be raised on appeal."].) As noted above, we are bound to follow this unbroken chain of decisions from the California Supreme Court. (*Auto Equity, supra*, 57 Cal.2d at pp. 455–456.)

Third, Velasquez argues the *Luce* rule does not "necessarily" apply here because the trial court's in limine ruling purportedly violated his federal constitutional right to testify on his own behalf, whereas no such federal constitutional claims were asserted in *Luce* or *Collins*.[6] We are not persuaded by Velasquez's efforts to circumvent the *Luce* rule because he has not established that the in limine ruling violated his constitutional rights.

Although the in limine ruling might have played a role in Velasquez's decision not to testify, it certainly did not bar him "from testifying. He was free to testify," if he elected to do so, "subject to impeachment with the prior misconduct evidence." (*People v. Sanghera* (2016) 6 Cal.App.5th 365, 375 (*Sanghera*).) This mere threat of impeachment did not violate Velasquez's constitutional rights. As *Collins* explained, "[n]o witness ... has the *right* to give testimony immune from ... challenge [by impeachment evidence]. The procedure of impeaching by proof of prior felony conviction originated at common law, and has long been authorized by our Legislature [citation]. It is settled that such impeachment does not violate the due process clause of either the federal or the state Constitution." (*Collins, supra*, 42 Cal.3d at p. 387; see also *Currier v. Virginia* (2018) 585 U.S. 493, 503 ["whether it's the defendant who must decide between exercising his right to testify in his own defense or keeping impeachment evidence of past bad acts from the jury. ...

---

6     "[T]he Fifth, Sixth, and Fourteenth Amendments to the United States Constitution guarantee that an accused has the right to testify on his or her own behalf." (*People v. Gutierrez* (2009) 45 Cal.4th 789, 821.)

This Court has held repeatedly that difficult strategic choices like these are 'not the same as no choice,' [citation], and the Constitution 'does not ... forbid requiring' a litigant to make them"]; *United States v. Howell* (6th Cir. 2021) 17 F.4th 673, 682 ["Although the possibility of being 'subject to impeachment by the use of a prior conviction' on cross-examination, in some sense, 'may *deter* a defendant from taking the stand,' that possibility does not amount to a constitutional violation because such circumstances do 'not *prevent* [a defendant] from taking the stand.' "].)

Thus, to the extent the in limine ruling was error, it was "one that involves state evidentiary rules, not a constitutional right." (*Sanghera, supra*, 6 Cal.App.5th at p. 374 [applying *Luce* rule despite claim that pretrial ruling violated defendant's constitutional right to testify]; see also *United States v. Lussier* (8th Cir. 2017) 844 F.3d 1019, 1023 [defendant "contends that the district court erred in ruling that it would admit impeachment evidence of his prior conviction ... if [he] testified, arguing that the ruling violated his Fifth Amendment right to due process and his Sixth Amendment right to a jury trial. By not testifying, [he] failed to preserve this claim"]; *United States v. Gunter* (6th Cir. 2009) 551 F.3d 472, 483 [defendant "attempts to distinguish *Luce* by arguing that it ... did not reach the constitutional right to testify .... This argument is unpersuasive."]; *Galindo v. Ylst* (9th Cir. 1992) 971 F.2d 1427, 1429 [applying *Luce* rule despite claim that admission of impeachment evidence violated right to testify]; accord *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1175 [noting that "the *Luce* rule is not inconsistent with *any* constitutional mandate"], italics added, abrogated on other grounds as recognized by *People v. Leon* (2020) 8 Cal.5th 831, 848.)

In any event, assuming Velasquez could raise a valid constitutional claim based on the in limine ruling, he does not direct us to any portion of the

record in which his counsel stated that he would refrain from testifying, or that he actually refrained from testifying, due to the in limine ruling. Even if his counsel had stated as much, we could not say with certainty that the in limine ruling was in fact a reason for Velasquez's waiver of his right to testify. "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,' [citation], a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify. In support of his [in limine] motion a defendant might make a commitment to testify if his motion is granted; but such a commitment is virtually risk free because of the difficulty of enforcing it." (*Luce, supra*, 469 U.S. at p. 42.)

For all these reasons, we conclude the *Luce* rule is directly applicable and controlling in the present case. Under a straightforward application of the *Luce* rule, Velasquez is precluded from challenging the trial court's in limine ruling based on his failure to testify at trial. (*Collins, supra*, 42 Cal.3d at p. 388; *Luce, supra*, 469 U.S. at p. 43.)

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

CASTILLO, J.

11