112 P.3d 754

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**David M. KANAMU, Defendant–Appellant.**

**No. 26069.**

Intermediate Court of Appeals of Hawai'i.

April 22, 2005.

Shawn A. Luiz, Honolulu, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

LIM, Acting C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

David M. Kanamu (Defendant or Appellant) appeals the August 5, 2003 judgment of the Circuit Court of the First Circuit[1] that convicted him—upon a jury's verdict and as charged—of promoting a dangerous drug in the third degree and unlawful use of drug paraphernalia. Defendant was sentenced to concurrent, five-year indeterminate terms of imprisonment, with his prison term for promoting a dangerous drug in the third degree subject to a mitigated mandatory minimum term of one year, as a one-strike repeat offender under Hawaii Revised Statutes (HRS) § 706–606.5 (Supp.2004). We affirm.

## I. Background.

The charges arose out of a traffic stop during the early morning hours of November 14, 2001. Police officer Shermon Dowkin (Officer Dowkin or Dowkin) testified at trial that he clocked Defendant driving more than fifteen miles per hour over the speed limit on Kahekili Highway.[2] Officer Dowkin de-

1. The Honorable Marie N. Milks presided. Judge Milks amended her August 5, 2003 judgment, in respects not material here, on September 18, 2003.

2. Before trial, David M. Kanamu (Defendant) moved *in limine* to exclude, "Evidence that the Defedant [sic] was driving under the influence; Evdience [sic] containing any indicia that Defendant was driving while under the influence[.]" (Enumeration omitted; format modified.) At the hearing on motions *in linine*, Defendant argued that such evidence was inadmissible because it was evidence of an uncharged crime, driving under the influence of an intoxicant (DUI). The deputy prosecuting attorney (DPA) proffered:

Shermon Dowkin [Officer Dowkin] is a certified drug recognition expert [DRE]. He will testify that the defendant was weaving grossly on Kahekili Highway; that he followed him for one-half of a mile driving at 60 or 65 miles per hour in a 45–mile–per–hour zone, weaving one to two feet out of his car over the—the lane of the highway for approximately 250 to 350 feet; that upon approaching the defendant's vehicle, his eyes were bloodshot and watery and there was a chemical odor on his breath and no alcoholic odor on his breath;

That the Officer Dowkin then administered the field sobriety test to Mr. Kanamu, which he failed. The officer also did PAS [preliminary alcohol screening] the defendant and did not suspect alcohol as a result of the PAS. Once back at the station the officer did administer to the defendant a DRE examination—and he is qualified as a DRE expert in prior DUI trials—and the defendant—the officer determined that the defendant was under a CNS stimulant, or central nervous system stimulant, which is consistent with ice.

Also, there are some statements with regard to using. The officer, upon stop, told the defendant you appear to be under the influence and the defendant said no, I haven't been using, which is probative in and of itself the language not having been using.

The circuit court decided:

The State will be allowed full opportunity to use it in rebuttal so have your officers stand by. If the defendant takes the stand and says it wasn't mine, I wasn't using, I wasn't, you know, State has full play to rebut. But you will not be permitted to use it in the case-in-chief. So, in other words, this will be a trial by rebuttal.

Some further, rather disjointed discussion followed, after which the circuit court apparently denied Defendant's motion *in limine*. However, at the start of the jury trial the next day, the DPA apparently clarified the final status of the ruling *in limine:*

[DPA]: Thank you. And in—and in so ruling, the Court will issue to the jury a cautionary instruction: You have heard testimony concerning the defendant's physical condition at the time of the traffic stop and at the police station. You are to consider that testimony solely for the purpose of the defendant's state of mind, that is, his intent or knowledge with respect to the offenses charged against him, and for no other purpose. To which we have no objection, Your Honor.

My understanding is also that with regard to the defendant's condition, the Court has further ruled that Officer Dowkin is not to talk about the fact that defendant stated he had

scribed Defendant's demeanor during the ensuing traffic stop: "his eyes appeared to be red, bloodshot and watery, his speech was soft, mumbled, slurred. He appeared to be extremely nervous, fidgeted in his seat, and at one point in time he appeared to jump in his seat and appeared paranoid." Officer Dowkin did not smell alcohol on Defendant's breath, but did detect "somewhat of a chemical type odor coming from his breath when he spoke to me." Officer Dowkin asked Defendant to step out of the car, and Defendant complied.

Officer Dowkin administered a field sobriety test and concluded that Defendant was impaired. While Officer Dowkin was reading him a police advisory about a preliminary alcohol screening, Defendant complained that he could not see the document and asked for his glasses. Defendant told Officer Dowkin that his glasses were in a backpack in the car. Officer Dowkin looked in the car and eventually located a backpack and therein, an eyeglass case. When Officer Dowkin opened the eyeglass case, he saw not only the eyeglasses, but a glass pipe for smoking crystal methamphetamine (commonly known as "ice") along with several small ziploc bags. When Officer Dowkin showed Defendant the eyeglasses, Defendant disclaimed ownership.

Officer Dowkin arrested Defendant and transported him to the police station. There, Officer Dowkin, a certified DRE (drug recognition expert) officer and instructor, performed a "DRE examination" and concluded that Defendant was under the influence of a central nervous system stimulant, possibly ice. In the process, Officer Dowkin ruled out alcohol impairment.

A later consent search of the backpack turned up some cotton swabs, a metal wire about four inches long, four matchbooks, four lighters, and more small ziploc bags, all of which are commonly used in the intricate enterprise of smoking ice. An envelope addressed to Defendant was also found in the backpack. Still later, a criminalist tested the items recovered during the traffic stop and the consent search, and determined that the glass pipe and one of the small ziploc bags contained ice. Some of the other ziploc bags contained residue, but in amounts insufficient for analysis.

At first, Defendant indicated that he was going to testify in his defense. However, after consultation with counsel, Defendant decided otherwise:

> THE COURT: Mr. Kanamu, did you have a chance to talk to your lawyer?
>
> THE DEFENDANT: Yeah. Yes.
>
> THE COURT: So you feel like she's telling you you can make up your own mind what to do? She said it was up to you; right?
>
> THE DEFENDANT: Mm-hmm.
>
> THE COURT: Okay. And what do you want to do?
>
> THE DEFENDANT: No.
>
> THE COURT: You don't want to?
>
> THE DEFENDANT: No.
>
> THE COURT: You want to remain silent?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And was that your own decision?
>
> THE DEFENDANT: Yes, ma'am.

been using. Two, that no—we will not get into the details of the field sobriety test, just the conclusion. Three, that the State will not detail the defendant's weaving behavior before the stop. The State will just talk about the fact that the defendant was speeding. Four, State will not talk about the fact that defendant refused to take a blood test to verify Officer Dowkin's opinion of whether the defendant was under the influence of ice.

In this case the—the State's only concern would be that some of these elements are required to prove the foundation for the DRE's opinion; however, the Court has determined that in this case the prejudicial value is too high and, therefore, keeping that out. However, the Court will allow the conclusion that will allow the DRE's opinions based on those conclusions.

THE COURT: And the officer may simply say that he proceeded through the steps. And if the defense wishes to get into more details, that's fine, but he can say he proceeded through the steps, and you can just have—say will you further explain step 4. So where it's not necessary, you can just proceed through the steps.

[DPA]: So with regard to the refusal of the blood test, are you saying the State would just ask, did you proceed through that step? Yes.

THE COURT: And move on.

[DPA]: And move on, okay.

THE COURT: And you made it without anyone forcing you to make the decision?

THE DEFENDANT: No one forced me to make the decision.

THE COURT: I just wanted to make sure that you know if you wanted to, you could. And what you're telling me is that you're not going to testify?

THE DEFENDANT: Yes, Ma'am.

Defendant did not put on any evidence. It took the jury two hours, including lunch, to find Defendant guilty as charged.

## II. Discussion.

### A.

▪ Defendant first contends the circuit court abused its discretion in sentencing him as a repeat offender under HRS § 706–606.5—thus denying his request for sentencing under HRS § 706–622.5 (Supp.2003), commonly referred to as Act 161—because, "The repeat offender statute does not trump the intent of Act 161, which is to rehabilitate drug users rather than incarcerate them." Opening Brief at 23 (underlining omitted). This point lacks merit. *State v. Smith,* 103 Hawai'i 228, 234, 81 P.3d 408, 414 (2003) ("HRS § 706–606.5, by its plain and unambiguous language, applies notwithstanding the sentencing provisions of HRS § 706–622.5"); *State v. Walker,* 106 Hawai'i 1, 9–10, 100 P.3d 595, 603–604 (2004) (the 2004 amendment (Act 44) whereby HRS § 706–622.5 "trumps" HRS § 706–606.5, *see* HRS § 706–622.5(1) (Supp.2004), does not apply to a sentencing taking place before Act 44's July 1, 2004 effective date).

### B.

▪ Defendant next contends the circuit court abused its discretion in allowing Officer Dowkin to testify as a drug recognition expert. The only cognizable arguments Defendant proffers on this point of error are as follows:

Dowkin testifying as an expert witness should not have been allowed as Dowkin did not meet the expert witness qualifications necessary to testify and hence the Circuit Court abused it's [sic] discretion and deprived Appellant the right to a fair trial as the testimony went to the ultimate substantive issue and Dowkin was not qualified to testify.

Opening Brief at 15.

Dowkin was not a medical doctor, had no medical training, and did Dowkin go to nursing school. Appellant's symptoms could have also been caused by over the counter Sudafed or diet pills. A person could jump, tremble from being cold or scared. Heart and other conditions can affect the pulse rate. Allergies and being tired can result in red eyes. Therefore based on the foregoing, no expert testimony should have been allowed of Dowkin.

Opening Brief at 29–30. We disagree. As stated, Defendant's arguments go to the weight, and not the admissibility, of Officer Dowkin's opinion that Defendant was under the influence of a central nervous system stimulant, possibly ice. *See State v. Rodrigues,* 67 Haw. 70, 74, 679 P.2d 615, 618 (1984) ("qualifications also go to weight, and Hawaii Rules of Evidence (HRE) Rule 702.1 expressly provides for cross-examination on this subject" (citation omitted)); *State v. Fukagawa,* 100 Hawai'i 498, 504, 60 P.3d 899, 905 (2002) (a police officer, by virtue of training and experience, may testify as an expert in the testing and identification of illegal drugs and drug paraphernalia, even though the police officer may lack a formal science degree).

### C.

▪ For his final point of error on appeal, Defendant contends the circuit court prejudicially erred by ruling *in limine* that the State would be allowed to introduce rebuttal evidence of driving under the influence of an intoxicant if Defendant testified that he did not own or use the contraband, because the circuit court's ruling prevented him from testifying in his defense. Assuming this point is in fact grounded in fact, see note 2, *supra,* it is devoid of merit. There is simply no indication that the circuit court's ruling prevented Defendant from testifying, or in any manner motivated Defendant's decision to remain silent.

Furthermore, Defendant did not signal a commitment to testify if the circuit court

ruled in his favor in this regard, and did not in any event make an offer of proof of his testimony. Under the circumstances present in this case, we invoke the United States Supreme Court's *"Luce* rule." *See Luce v. U.S.,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) ("to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"). As explicated by the Ninth Circuit Court of Appeals:

> Johnson argues that the district court deprived him of his constitutional right to testify on his own behalf by ruling that he could be required to try on or hold up the clothing which was found in the carry-on bag should he decide to take the stand and testify in his own defense. The government argues that Johnson has failed to preserve this issue for appeal because he failed to take the stand and subject himself to the clothing demonstration.
>
> In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the Supreme Court held that a defendant must testify in order to preserve for review a claim of improper impeachment. *See also U.S. v. Bagley,* 837 F.2d 371, 376 (9th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988); *U.S. v. Behanna,* 814 F.2d 1318, 1321 (9th Cir.1987). A trial court's decision to admit impeachment evidence under Rule 609, Fed.R.Evid., is not reviewable when the defendant does not testify because, among other things, the appellate court cannot determine from the record what possible harm flowed from such a ruling. *Luce,* 469 U.S. at 41–42, 105 S.Ct. at 463.
>
> In *Luce,* the trial court balanced the probative value of a prior conviction against the prejudicial effect to the defendant and on appeal the Supreme Court held that "[t]o perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." *Id.* at 41, 105 S.Ct. at 463. The Supreme Court identified several problems with review under such circumstances: the ruling would be subject to change depending on the defendant's testimony at trial; the reviewing court has no way of knowing how and if the government would have used the impeachment evidence; the reviewing court cannot assume that the defendant's decision not to testify was based on the adverse ruling; and the reviewing court has no way of determining whether the district court's *in limine* ruling was harmless error. *Id.* at 42, 105 S.Ct. at 463.
>
> We find these same problems with review are present here. In the instant case, the district court held that the clothing demonstration would not be excluded under Rule 403, Fed.R.Evid. The district court weighed the probative value of the clothing demonstration against the prejudicial effect to Johnson, just as the trial court did in *Luce.* The district court did not explicitly predicate its ruling on the content of Johnson's testimony; however, it is clear that the clothing demonstration would have been used to rebut his anticipated denial of ownership of the carry-on bag which contained cocaine. On review, this court cannot determine the propriety of such ruling without knowing Johnson's testimony or the context of the clothing demonstration. We cannot determine whether the demonstration would have been more prejudicial than probative when it did not take place.
>
> The instant case is also similar to *Luce* in that Johnson was given a choice—to testify and have possibly damaging prejudicial evidence come in, or not to testify and keep the evidence out. Because Johnson did not even attempt to testify, he may not now challenge the ruling. *See Bagley,* 837 F.2d at 375 ("[t]o preserve an issue for review requires an offer of proof and the making of a record").

*U.S. v. Johnson,* 903 F.2d 1219, 1222 (9th Cir.1990) (brackets in the original; footnote omitted). *See also People v. Sims,* 5 Cal.4th 405, 20 Cal.Rptr.2d 537, 853 P.2d 992, 1022 (1993) ("if a defendant wishes to preserve for appeal an objection to a trial court's *in limine* ruling permitting impeachment by a prior conviction, he or she must take the witness stand and actually suffer such impeachment" (citing *Collins, infra* )); *People v. Collins,* 42 Cal.3d 378, 228 Cal.Rptr. 899, 722 P.2d 173, 177–78 (1986) (adopting the

*Luce* rule, and noting (n.5) that "the other states that have addressed the matter have been virtually unanimous in adopting the *Luce* rule as their own" (footnote omitted)).

### III.  Conclusion.

Accordingly, the circuit court's August 5, 2003 judgment, as amended on September 18, 2003, is affirmed.

