Filed 2/19/15  P. v. Nateghi CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>YOUNES NATEGHI,<br><br>　　Defendant and Appellant. | G048882<br><br>(Super. Ct. No. 11CF1393)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Tom Stanley for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbankski and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

A jury convicted defendant and appellant Younes Nateghi of six counts of automobile insurance fraud (Pen. Code, § 505, subds. (a)(1) & (b)(1))[1] and two related counts of grand theft (§ 487, subd. (a)). Defendant then admitted the additional allegation (§ 550, subd. (d)) that he had previously been convicted of insurance fraud in nine separate cases. The court sentenced defendant to four years, four months in county jail. Defendant timely appealed.

Defendant contends the court erred by denying his motion to exclude all evidence of his prior insurance fraud convictions under Evidence Code section 352. Defendant also contends the evidence is insufficient to support his current insurance fraud convictions. We reject both of these contentions and affirm.

**FACTS**

On August 16, 2007, a truck driven by Jesse Grigg and insured by Bristol West Insurance Company (Bristol West) collided with a Honda driven by Kaysaun Franklin. Timothy Groeschel and Joshua Walker were passengers in Franklin's Honda. Franklin's Honda suffered major front end damage and was later totaled. Grigg was found to be at fault for the accident and appeared to have been drinking.

Defendant and Mitra Ensani, Franklin's mother and defendant's ex-wife, went to the accident scene. Groeschel complained of pain and was taken to the hospital. Walker had abrasions on his knee and elbow but did not request medical treatment.

Several months later, Franklin, Groeschel and Walker went to a chiropractor named Gharrirassi with Ensani and defendant. Franklin saw the chiropractor just that one time, and signed a number of documents but never received any treatment. Groeschel too only saw the chiropractor that one time, and received no treatment but signed a number of documents. Walker also saw the chiropractor just once, did some basic physical tests and filled out some paperwork, but received no treatment from him.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Franklin never drove the Honda after the accident and never used a rental car. Franklin never authorized anyone to contact any insurance company or file any claim on his behalf. Franklin did receive a $1,476.34 check from Bristol West for damage to the Honda. Franklin did not speak to anyone from Bristol West, did not receive any other insurance checks, and did not sign a release of claims.

Neither Walker nor Groeschel ever received or endorsed a check from Bristol West, or received any money from the accident. Neither ever authorized anyone to file an insurance claim on their behalf, or signed a release of claims.

On August 30, 2007, a male who claimed to be Franklin (claimant) called and faxed a copy of the police report to Bristol West. The sending fax number was defendant's body shop number. The call back number was defendant's brother's number.

The police report had been altered before it was faxed to Bristol West. Franklin's address had been changed to defendant's address, Franklin's phone number was scratched out, and defendant's body shop fax number was added.

Telephone records showed two calls from defendant's body shop to Bristol West on August 30, 2007. A fax was also sent from defendant's body shop to Bristol West that day.

On September 10, 2007, the claimant again called Bristol West and said the police report had been faxed. Telephone records showed a corresponding call made from defendant's body shop.

On September 11, 2007, the claimant called Bristol West, wanted to know the status of his claim, and asked for rental car reimbursement. The caller said he had been without a car since the accident, and that his two passengers were injured and were receiving medical treatment. Telephone records showed two calls that day from defendant's body shop to Bristol West. Bristol West mailed a $1,467.34 check payable to Franklin for the Honda the same day.

3

On September 14, 2007, the claimant called Bristol West, indicated the $1,467.34 check had been received, and stated a rental car bill would be submitted. The caller said he and his passengers would submit their medical bills.

On September 17, 2007, a Simply Rent-A-Car bill for $1,004.10 was faxed to Bristol West from defendant's body shop. Telephone records showed a fax was sent on that date to the Bristol West adjuster from defendant's body shop. Bristol West then issued a $1,004.10 check payable to Franklin for the rental car.

In February 2008, Franklin and his girlfriend moved in with defendant and Ensani at 5141 Yearling Avenue in Irvine. While Franklin and his girlfriend were living there, mail from Bristol West came to the house and Ensani gave it to defendant. In late February, mail addressed to Walker, Groeschel and Franklin came to the house, and Ensani gave it to defendant. Neither Walker nor Groeschel ever lived with defendant.

On February 22, 2008, Bristol West received a letter, purportedly from Franklin, together with bodily injury demands, medical reports and medical bills for Franklin, Groeschel and Walker. On March 4, 2008 the claimant left a message that he had submitted $3,800 in medical bills and wanted payment.

The medical bills for Franklin totaled $4,150, and Bristol West settled his bodily injury claim for $6,500. The medical bills for Groeschel totaled $3,775, and Bristol West settled his bodily injury claim for $7,000. The medical bills for Walker totaled $3,975, and Bristol West settled his bodily injury claim for $6,000.

On March 31, 2008, after receiving releases purportedly signed by Franklin, Groeschel and Walker, Bristol West mailed to defendant's Yearling Avenue address the settlement checks payable to Franklin, Groeschel and Walker. These checks, and the checks for the damage to the Honda and the rental car were cashed.

Defendant's body shop, "Go Original," "Go Collision," or "Master Auto Body," was on Belshire Avenue in Hawaiian Gardens. It was run by defendant and his brother Amir Nateghi.

4

A Master Auto Center business card listed the phone and fax numbers which had been used in the correspondence with Bristol West. Telephone records showed the subscriber as "Go Original Collision Care" on Belshire Avenue.

The owner listed on the business license for Simply Rent-A-Car on Belshire Avenue in Hawaiian Gardens is Elahe Nateghi, defendant's daughter.

Jack's Liquor in Hawaiian Gardens cashed checks, including insurance checks. Amir, who the employees knew as "Mike," was a regular customer. He often brought in checks from "Go Auto Collision" and Simply Rent-A-Car.

Defendant was contacted at Go Collision by an investigator. Defendant initially denied knowing a chiropractor named Gharrirassi, but later remembered some of his family members had gone to Gharrirassi. Defendant also denied knowing Franklin, but then admitted Franklin was his ex-wife's son. He first denied knowing anything about Franklin's accident, but again changed his story and admitted being at the scene.

Defendant claimed Ensani handled everything regarding Franklin's accident. He said they divorced and she moved out of their house in November 2007. When asked about receiving checks from Bristol West in 2008, defendant changed his earlier statement and said she moved out in November of 2008. Defendant denied being involved in handling any of the insurance documents or being involved in any of the contacts with the insurance company.

California Bank records showed the $6,000 Bristol West check payable to Walker, with an endorsement signature on the back, was deposited in a Jack's Liquor account on April 3, 2008. Hanmi Bank records indicated the $7,000 Bristol West check payable to Groeschel, with an endorsement signature on the back, was deposited in a Jack's Liquor account on April 8, 2008. The parties also stipulated the three Bristol West checks payable to Franklin, in the amounts of $1,476.34, $1,004.10, and $6,500, each with endorsement signatures on the back, were cashed. Two of those checks were deposited into Ensani's Bank of America account.

5

## DISCUSSION

*1. The Court's Denial of Defendant's Motion To Exclude His Prior Convictions Offered For Impeachment Purposes Is Not Reviewable On Appeal Because He Did Not Testify.*

Defendant's nine prior felony insurance fraud convictions concerned conduct which occurred in 1994, 1995, and 1996. Before the trial in this case, the prosecutor moved to admit these prior convictions for impeachment purposes if defendant testified. In response, defense counsel moved to exclude these prior convictions under Evidence Code section 352, because they were remote in time and thus had little probative value, and because they involved the exact same offenses charged here so they were unduly prejudicial. The court ruled the prosecution would be allowed to impeach defendant with only one of these prior convictions, and the questioning would be limited to "the date and the fact it was a felony and the name of the charge, nothing else." Defendant did not testify at trial.

Defendant contends the court erred. However, "Defendant has failed to preserve this claim of error. It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify. (See *Luce v. United States* (1984) 469 U.S. 38 (*Luce*) [denial of in limine motion to preclude impeachment of the defendant with a prior conviction is not reviewable on appeal if the defendant did not testify]; *People v. Collins* (1986) 42 Cal.3d 378, 383–388 (*Collins*) [prospectively adopting the *Luce* rule].)" (*People v. Ledesma* (2006) 39 Cal.4th 641, 731.) Therefore, we reject this contention.

*2. The Evidence Is Sufficient to Support Defendant's Insurance Fraud Convictions.*

Defendant contends, in a perfunctory manner, the evidence is insufficient to support any of his current insurance fraud convictions. Defendant does not specify how the evidence is insufficient. Leaving aside his recitation of general principles, his argument on this point is the following single sentence: "At most, the evidence presented may raise a suspicion of guilt and this is clearly not enough to withstand scrutiny."

6

Defendant apparently assumes "this court will construct a theory supportive of his innocence and inconsistent with the prosecution's version of the evidence. That is not our role. '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.] This principle is especially true when an appellant makes a general assertion, unsupported by specific argument, regarding insufficiency of evidence. [Citation.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793; see also, *People v. Islas* (2012) 210 Cal.App.4th 116, 128.)

Nonetheless, we have reviewed the record in light of the elements of the offenses and standard of review enunciated in the authorities set out below, and find it amply supports all of defendant's current insurance fraud convictions.

a. *Standard of Review*

"'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1077.) The standard of review is the same in cases in which the prosecution relies on circumstantial evidence. (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.'" (*People v. Stanley*, *supra*, 10 Cal.4th at pp. 792-793.) Accordingly, we must affirm the judgment if the circumstances reasonably justify the jury's finding of guilt regardless of whether we believe the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

7

### b. Elements of the Offenses and the Evidence

As relevant here, the court instructed the jury preliminarily with CACI 400, "Aiding and Abetting: General Principles," and CACI 401, "Aiding and Abetting: Intended Crimes." Next the court instructed the jury regarding the elements of insurance fraud by fraudulent claim in violation of section 550, subdivision (a), as charged in count 1, as follows:

"1. The defendant or a perpetrator presented or caused to be presented a false or fraudulent claim for payment for a loss or injury;

"2. The defendant or perpetrator knew that the claim was false or fraudulent;

"AND

"3. When the defendant or perpetrator did that act, he intended to defraud."

The court also instructed the jury regarding the elements of insurance fraud by presentation of a written or oral statement in violation of section 550, subdivision (b), as charged in counts 2 through 6, as follows:

"1. The defendant or a perpetrator presented or caused to be presented the following written or oral statements as part of, or in support of or opposition, to a claim for payment or other benefit pursuant to an insurance policy:

"a. For count [2], the defendant or a perpetrator identified himself as claimant Kaysaun Franklin on or about August 30, 2007;

"b. For count [3], the defendant or a perpetrator identified himself as claimant Kaysaun Franklin on or about September 11, 2007;

"c. For count [4], the defendant or a perpetrator presented or caused to be presented a false rental car bill on or about September 17, 2007;

"d. For count [5], the defendant or a perpetrator presented or caused to be presented a false medical bill on or about February 22, 2008;

8

"e. For count [6], the defendant or a perpetrator presented or caused to be presented a false release of all claims on or about March 31, 2008;

"2. The defendant or a perpetrator knew that the statement contained false or misleading information about any material fact;

"AND

"3. When the defendant or a perpetrator did that act, he intended to defraud."

The evidence presented at trial was sufficient to establish defendant's guilt on the insurance fraud charges in counts 1 through 6, either as a direct perpetrator or as an aider and abettor. The evidence showed Franklin, Groeschel and Walker did not present claims to Bristol West, contact Bristol West or authorize anyone to file claims with Bristol West on their behalf. The evidence also showed defendant came to the scene of the accident, and later took Franklin, Groeschel and Walker to a chiropractor on just one occasion where they received little treatment but signed numerous documents.

Thereafter, falsified claims for medical treatment by the chiropractor were submitted to Bristol West for Franklin, Groeschel and Walker. Further, although none of the three ever signed or submitted any release forms, falsified release forms for all three were submitted to Bristol West and checks payable to all three were mailed to defendant's home. Two of those checks were cashed at Jack's Liquor, where defendant's brother regularly did business. Multiple telephone calls and faxes, between a man who represented himself as Franklin and Bristol West, were all made from and to the body shop operated by defendant and his brother or to his brother's phone. The false rental car bill from a rental car company owned by defendant's daughter was faxed to Bristol West from defendant's body shop. Later, defendant was interviewed about the accident and the claims submitted, and he was elusive and changed his story several times. These facts and the other evidence summarized above warranted the jury finding defendant guilty of the insurance fraud charges in counts 1 through 6.

9

**DISPOSITION**

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.