Filed 3/4/24  P. v. Rayford CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HEAVEN RAYFORD,<br><br>Defendant and Appellant. | F084696<br><br>(Super. Ct. No. BF183256B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Heaven Rayford assisted Mickey Pulley to rob a gas station and take a television (TV) from a retail store. Convicted of two counts of robbery after separate trials, the trial court suspended sentence and placed defendant on a three-year term of probation. Defendant appeals her conviction and argues that the trial court erred in ruling that the conviction of the first robbery count could be used to impeach her should she testify at retrial of the second robbery count. Defendant also argues that the trial court abused its discretion and denied her a fair trial by excluding evidence of her exculpatory statements to police. In her reply brief, defendant acknowledges that, by failing to testify, she forfeited any challenge to the court's ruling to allow the prosecutor to impeach with her conviction on the first robbery count.

We agree that defendant forfeited her challenge to the trial court's ruling to allow use of her robbery conviction to impeach and find that the trial court did not abuse its discretion when it excluded her postarrest exculpatory statements as hearsay and not within the hearsay exception for evidence of her state of mind. We affirm the judgment.

**PROCEDURAL BACKGROUND**

The District Attorney of Kern County filed an information on January 28, 2021, charging defendant and Pulley with three counts of robbery. (Pen. Code, § 212.5, subd. (c); counts 1–3). Defendant pleaded not guilty to all counts. The trial court granted the prosecutor's motion to dismiss count 3 prior to trial on July 27, 2021. On August 9, 2021, a jury convicted defendant of count 1 but could not reach a verdict as to count 2.[1] After retrial, a jury convicted defendant of count 2 on June 24, 2022.

The trial court suspended imposition of sentence, placed defendant on probation for three years, and ordered her to serve one year in county jail. The court also ordered defendant to pay victim restitution (Pen. Code, § 1202.4, subd. (f)), a $300 restitution fine

---

[1] The jury acquitted Pulley of count 1 but failed to reach a verdict as to count 2.

(Pen. Code, § 1202.4, subd. (b)), a suspended $300 probation revocation restitution fine (Pen. Code, § 1202.45), $20 in crime prevention fees (Pen. Code, § 1202.5), $60 in criminal conviction assessments (Gov. Code, § 70373), and $80 in court operations assessments (Pen. Code, § 1465.8, subd. (a)(1)).[2]

Defendant timely appealed on July 25, 2022.

## FACTS

### I. Count 1—evidence from the June 2021 trial.

On November 2, 2020, Pulley and defendant entered a gas station where L.M. was working as a cashier, and Pulley asked for the manager. Pulley was wearing a black hooded sweatshirt, mask, and purple gloves. L.M. testified that Pulley told her "[n]ot to do anything crazy" and motioned toward his waist, which caused L.M. to believe that Pulley had a gun. Defendant was wearing a yellow hooded sweatshirt and a mask.

When the manager arrived, Pulley spoke with her and asked defendant to watch L.M. while Pulley and the manager went to the back of the gas station. The manager assisted Pulley with placing cartons of cigarettes into trash bags. Video surveillance recordings showed defendant stood by L.M. until Pulley returned with two large black trash bags, and then defendant and Pulley left the gas station. The manager then called 911. Neither defendant nor Pulley paid for the cigarettes.

Video surveillance from a neighboring business recorded defendant and Pulley as they arrived in the area and parked their red vehicle behind an adjacent business in the empty parking lot. The recording also showed defendant and Pulley leaving their red vehicle and walking toward the street in the direction of the gas station. Defendant and

---

[2]    Defendant failed to appear during her first trial on August 4, 2021. The trial court issued a bench warrant but continued hearing the trial in her absence. Defendant did not appear for proceedings again until December 20, 2021. In a separate case, defendant was charged with a failure to appear in violation of Penal Code section 1320.5 and pleaded guilty. The trial court suspended sentence in that case and placed defendant on a concurrent two-year term of probation.

3.

Pulley were also recorded as they returned to their vehicle with Pulley carrying black garbage bags.

## II.     Count 2—evidence from the June 2022 retrial.

On November 6, 2020, K.R. was working as an asset protection associate at a retail store in Kern County.  Surveillance recordings showed defendant and Pulley entering the store with a boxed TV in a shopping cart and contacting an employee at the customer service counter.  The customer service employee pointed to the service policies, and then defendant and Pulley placed the TV back into the shopping cart and left the counter.  After receiving a telephone call from customer service, K.R. watched surveillance cameras and observed defendant and Pulley as they left the customer service area and proceeded toward the electronics department.

After stopping at the TV area, defendant and Pulley removed the TV they brought from their cart and replaced it with a TV from the shelf.  Defendant and Pulley then walked through the sporting goods department and toward the front door without stopping either at customer service or a cashier's register.

K.R. approached defendant and Pulley and identified himself as an asset protection officer and asked about the TV.  Neither defendant nor Pulley claimed that any employee had given permission for them to remove the TV.  K.R. attempted to retrieve the TV from defendant and Pulley.  Pulley became violent and aggressively pushed K.R. multiple times as he told K.R. that he was taking the TV and that it was the TV he brought with him into the store.  K.R. repeatedly told Pulley that K.R. had observed them switch TVs and they could not leave with the TV that had been removed from the store shelf.  The customer service representative who had assisted defendant and Pulley when they first entered the store joined K.R. and also advised them that they could not leave with the TV.

4.

Pulley never claimed that he had permission to exchange the TV or that he had a right to do so. Pulley repeatedly told K.R. that he would "fucking kick [K.R.'s] ass." Concerned for his own safety and that of other customers, K.R. backed away from defendant and Pulley.

Defendant and Pulley took the TV from the store shelf outside the store, and Pulley reentered the store and proceeded back to the area where he had left the TV they brought into the store. Meanwhile, K.R. went outside the store and retrieved the TV taken from the shelf. Defendant took the TV from K.R.'s hands and took it outside again. Pulley arrived back at the store entrance and punched K.R. in the face, chest, arms, and legs.[3] Pulley ran outside. Neither defendant nor Pulley paid for the TV.

## DISCUSSION

### I. By not testifying, defendant forfeited her argument that the trial court abused its discretion by granting the prosecutor's motion to impeach her with her robbery conviction on count 1.

Defendant challenges the trial court's ruling that, if she testified, she could be impeached with evidence of her recent robbery conviction. " 'It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify.' " (*People v. Duong* (2020) 10 Cal.5th 36, 56–57; see *Luce v. United States* (1984) 469 U.S. 38, 41–43.) Defendant acknowledges this rule in her reply brief and presents no compelling reason to deviate from settled jurisprudence that defendant must testify to preserve a challenge to the court's tentative ruling on impeachment. (See *People v. Collins* (1986) 42 Cal.3d 378, 383–388 [adopting rule].) Therefore, we conclude that defendant forfeited any challenge to the trial court's decision to allow defendant to be impeached by her robbery conviction on count 1 as a result of the first trial.

---

**3** K.R.'s testimony was corroborated by recordings from the surveillance cameras.

**II.** **The trial court did not abuse its discretion in excluding defendant's statements to law enforcement.**

**A.** **Background**

At the first trial, the prosecutor prepared a redacted transcript of defendant's interview by Detective Dunn and intended to introduce only statements as to the gas station robbery. Defendant's attorney moved to introduce defendant's statements as to the retail store robbery as well, pursuant to Evidence Code section 1250,[4] as evidence of defendant's state of mind and that she believed that she had a right to exchange the TV. The trial court ruled that "in light of the testimony that came out yesterday regarding … the loss prevention agent, I don't see any harm in allowing [defendant's counsel] to get into the [defendant]-Dunn conversation," but then instructed the prosecutor to read that portion of the transcript during her examination of Dunn.

Defendant's statements that were read into evidence by Detective Dunn had been edited to omit any reference to Pulley so as not to violate Pulley's right to confrontation under the *Aranda-Bruton* doctrine. (See *People v. Aranda* (1965) 63 Cal.2d 518, 530 [admission of a facially incriminating statement of a nontestifying codefendant at a joint trial deprives defendant of their Sixth Amendment right to confront witnesses], superseded by constitutional amendment as stated in *People v. Fletcher* (1996) 13 Cal.4th 451, 465; *Bruton v. United States* (1968) 391 U.S. 123, 127–128.) Dunn testified that he spoke with defendant after advising her of her *Miranda*[5] rights. When asked about the retail store incident, defendant told Dunn, " 'They wouldn't exchange the TV when all I was trying to do was bring … the TV back' " and " 'exchange it for another one.' " Defendant explained that the TV she brought back to the store was broken and would not turn on. Defendant stated that she left the store with a brand-new TV after taking it from the loss prevention employee and it was it currently in her residence.

---

**4**     Undesignated statutory references are to the Evidence Code.

**5**     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The complete transcript of defendant's interview includes her statement that she and Pulley were "bringing back a TV and they though[t] we's tryna' steal the TV but no, they wouldn't uhh cause we couldn't exchange the TV, they wouldn't let us exchange the TV when all we was tryna' do was bring … our TV back" and "exchange it for another one." Defendant explained that the TV was not working and they were "just trying to exchange it and they wouldn't let us." Defendant also agreed that that she and Pulley exchanged the TV themselves and they "[were] in the right so we got our TV." When Detective Dunn asked whether they had problems with the employees, defendant responded, "[T]hey [were] in the wrong cause at the end of the day like, we [were] suppose[d] to get it … like we got our TV at the end of the day. We were supposed to get our like the brand new TV." Defendant also told Dunn that she and Pulley purchased the TV they brought back, but they did not have the receipt.

Defendant and Pulley moved to admit Detective Dunn's prior testimony as to defendant's statements pursuant to section 1250: "evidence of a statement of the declarant's then existing state of mind …: [¶] (1) … offered to prove the declarant's state of mind … at that time or any other time when it is itself an issue in the action; or [¶] (2) … offered to prove or explain acts or conduct of the declarant." (§ 1250, subd. (a)(1), (2).) The trial court initially denied the request because defendant's statement admitted at the first trial had been changed so as not to mention Pulley and, therefore, the court excluded it under section 352 as prejudicial and misleading.

Defendant then moved that the original statements be admitted. The trial court concluded that defendant's statements reflected her state of mind at a time *before* she made the statement (as opposed to her state of mind at the time that she made the statement). The trial court also recognized that defendant made the statements at a time when she had a motive to lie to avoid arrest.

7.

## B.     Applicable Law and Standard of Review

Defendant argues the trial court abused its discretion by excluding evidence of the statements she made to Dunn after she received *Miranda* warnings. " 'We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion.' " (*People v. Henriquez* (2017) 4 Cal.5th 1, 31.) "The trial court is vested with broad discretion in determining the admissibility of evidence. [Citation.] This is particularly true where, as here, underlying that determination are questions of relevancy, the state of mind exception to the hearsay rule and undue prejudice. [Citation.] The lower court's determination will be reversed only upon a finding of abuse." (*People v. Ortiz* (1995) 38 Cal.App.4th 377, 386.)

"Except as otherwise provided by statute, all relevant evidence is admissible." (§ 351.) However, pursuant to section 1200 (the principal hearsay provision), out-of-court statements are inadmissible when offered to prove the truth of the matter stated, with specified exceptions. Where a declarant's statements are circumstantial evidence of the declarant's state of mind and not dependent on the truth of the statements or offered to prove the truth of the statements, such statements are not hearsay and are admissible. (*People v. Harris* (2013) 57 Cal.4th 804, 843 (*Harris*).) Direct out-of-court statements describing a declarant's state of mind are hearsay if offered to prove the truth of the matter stated, but admissible to prove the declarant's state of mind if they satisfy section 1250. (*Harris*, at p. 843; see *People v. Ortiz*, *supra*, 38 Cal.App.4th at p. 389.) Sections 1250 and 1252 provide for admissibility of trustworthy statements offered to prove the state of mind of the declarant at the time that the statement was made (§ 1250, subd. (a)(1)) or to prove or explain acts or conduct of the declarant (§ 1250, subd. (a)(2).)

Section 1250, subdivision (a) provides, in relevant part, that "evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan …) is not made inadmissible by the hearsay rule when:  [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or

physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant." However, "[t]his section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." (§ 1250, subd. (b).)

Subject to section 1252 (§ 1250, subd. (a)), this hearsay exception is inapplicable " 'if the statement was made under circumstances such as to indicate its lack of trustworthiness." (Evid. Code, § 1252.) [¶] ' "The decision whether trustworthiness is present requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception. Such an endeavor allows, in fact demands, the exercise of discretion." ' [Citation.] 'To be admissible under Evidence Code section 1252, statements must be made in a natural manner, and not under circumstances of suspicion, so that they carry the probability of trustworthiness. Such declarations are admissible only when they are " 'made at a time when there was no motive to deceive.' " ' " (*People v. Ervine* (2009) 47 Cal.4th 745, 778–779.)

## C. Analysis

### 1. *The Trial Court Did Not Abuse Its Discretion in Finding That Defendant's Post-*Miranda *Statements Were Not Admissible Pursuant to Section 1250*

Defendant argues that the trial court erred by excluding her statements as untrustworthy "even though it found" that defendant's post-*Miranda* statements were "statements of the past state of mind." Defendant's argument suggests that the trial court found that the statements fell within the hearsay exception but were excluded by the trial court because the statements were not trustworthy. Contrary to defendant's argument, by characterizing defendant's statements as describing her "past state of mind," the trial court ruled that her statements were hearsay and did not fall within section 1250's exception to the hearsay rule.

9.

Section 1250, subdivision (a) provides an exception to the hearsay rule for a statement of the declarant's *then existing* state of mind (that is, at the time the statement was made), and if offered to prove the declarant's state of mind "*at that time or at any other time when it is itself an issue in the action.*" (§ 1250, subd. (a)(1), italics added.) Defendant defended against the robbery charge, arguing that she believed that she had the right to take the new TV from the store and exchange it for her broken TV. Therefore, we conclude that defendant's state of mind at the time of the robbery was at issue in the case and statements reflecting her state of mind at that time were relevant to her defense. However, defendant did not seek to admit statements she made at the time of the robbery. Rather, she attempted to introduce the statements that she made to Detective Dunn after the robbery. Defendant's post-*Miranda* statements described her past state of mind, that is, her state of mind at the time of the robbery, but the statements were not made at the time of the robbery. Therefore, defendant's post-*Miranda* statements did not fall within the hearsay exception because defendant's state of mind at the time of the interview was not relevant to her defense.

The trial court's exclusion of the statements as past state of mind and hearsay is supported by our Supreme Court's decision in *People v. Whitt* (1990) 51 Cal.3d 620 (*Whitt*). At his retrial, Whitt attempted to introduce statements he made during a prison interview which discussed his past exploits, past feelings, and his new attitude toward life. (*Id.* at p. 641.) Whitt sought to introduce his out-of-court statements to prove past events and feelings that he described in the statements and, therefore, the Supreme Court concluded that the evidence was hearsay. (*Id.* at p. 642.)

The Supreme Court further held that "[c]ontrary to [Whitt's] assertion, the mental state exception to the hearsay rule does not apply. ([§ 1200], § 1250, subd. (a).) The exception is limited to out-of-court statements describing a relevant mental state being experienced by the declarant *at the time* the statements were made. (1 Jefferson, Cal. Evidence Benchbook (2d. ed. 1982) § 14.1, pp. 383–384.) [Whitt's] statements on two

10.

topics—events and feelings experienced *before* the interview—do not fit this description, and are inadmissible to prove their truth."**6** (*Whitt*, *supra*, 51 Cal.3d at pp. 642–643, fn. omitted.) The court also recognized that "statements recounting past events are an implicit expression of the declarant's belief or memory that such events occurred, and are inadmissible for their truth under Evidence Code section 1250, subdivision (b)," which specifically excludes evidence of a statement of memory or belief to prove the fact remembered or believed. (*Id*. at p. 643, fn. 13, citing 1 Jefferson, *supra*, § 14.1, at pp. 385–386.) Therefore, section 1250 is limited to admitting out-of-court statements that describe the declarant's relevant mental state at the time the statements were made.

In this case, defendant attempted to admit her statements to Detective Dunn after the retail store robbery. If her state of mind at the time of the interview was relevant to an issue in the case, such statements would be admissible to prove her state of mind while speaking with Dunn pursuant to section 1250, subdivision (a). However, defendant's state of mind while speaking to Dunn was not relevant to her claim of right of defense, which was dependent upon her state of mind at the time of the robbery. Statements after the robbery are inadmissible hearsay because they purport to explain defendant's state of mind at the time of the robbery and do not come within section 1250's exception for the admission of hearsay describing the declarant's state of mind.

The trial court did not abuse its discretion in excluding defendant's later statements describing her state of mind at the time of the retail store robbery.**7**

---

**6**      The court recognized that Whitt's statements concerning his then existing feelings of Christian rebirth satisfied section 1250, subdivision (a) but concluded the trial court did not err because the statements were not trustworthy as they had been made while Whitt was seeking a retrial. (*Whitt*, *supra*, 51 Cal.3d at p. 643.)

**7**      We note that section 1251 permits the admission of a declarant's statements of a past mental state that would otherwise be hearsay if the declarant is unavailable and the statements are otherwise trustworthy. (§ 1251.) However, in this case, defendant was not "unavailable" within the meaning of this section because she could have testified, and she has not argued for admission under this exception. (See *People v. Edwards* (1991) 54 Cal.3d 787, 819 (*Edwards*) ["Although [Edwards] possessed, and exercised, a privilege not to testify, the choice was his.…

### 2. The Trial Court Did Not Abuse Its Discretion in Ruling That the Hearsay Statements Were Made Under Circumstances Indicating a Lack of Trustworthiness

But even if defendant's hearsay statements were otherwise admissible under the state of mind exception (§ 1250, subd. (a)(1)), such evidence may be rendered inadmissible if circumstances indicate the statements lack trustworthiness as required by section 1252. (*Harris*, *supra*, 57 Cal.4th at pp. 843–844; § 1252.) The trial court did not abuse its discretion in excluding defendant's post-*Miranda* statements because they were not trustworthy.

A statement is trustworthy within the meaning of section 1252 when it is " ' "made in a natural manner, and not under circumstances of suspicion" ' " (*Harris*, *supra*, 57 Cal.4th at p. 844) or " ' "at a time when there was no motive to deceive" ' " (*Edwards*, *supra*, 54 Cal.3d at p. 820). Our Supreme Court has held that a defendant's five-page note, written after shooting an officer and while law enforcement gathered outside waiting to arrest the defendant, were not trustworthy because the circumstances provided "ample ground to suspect his motives and sincerity when he wrote [the] self-serving documents." (*People v. Ervine*, *supra*, 47 Cal.4th at pp. 777, 779.) The Supreme Court also rejected another defendant's attempt to introduce a notebook containing his thoughts, written nine days after he murdered someone, and an interview with the police concerning the crime. (*Edwards*, at pp. 818–819). In *Edwards*, the Supreme Court concluded that the trial court did not abuse its discretion in excluding the statements as untrustworthy because " '[a] defendant in a criminal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination.' " (*Id*. at p. 820.) There is " 'ample ground to suspect [a] defendant's motives and sincerity' "

---

As stated in the Comment of the Assembly Committee on the Judiciary to Evidence Code section 240, the section defining the phrase 'unavailable as a witness,' 'if the out-of-court statement is that of the party himself, he may not create "unavailability" under this section by invoking a privilege not to testify.' "], overruled on other grounds as recognized in *People v. McDaniel* (2021) 12 Cal.5th 97, 138.)

12.

when a defendant makes statements about a crime they committed when they are under suspicion and possessed the motive to deceive and exonerate themselves. (*Ibid*.) "The need for cross-examination is especially strong in this situation, and fully warrants exclusion of the hearsay evidence." (*Ibid*.)

Here, defendant told Detective Dunn that she had been attempting to return a broken TV in exchange for a new one, but store employees would not permit the exchange. Defendant said she and Pulley took a new TV from the retail store and were eventually permitted to leave with it because they were right. She made these statements in response to questioning by Dunn who was attempting to determine what had transpired at the store. If defendant believed that she had a right to the new TV based upon the store's policies, this would be a defense to robbery. Therefore, defendant plainly had a motive to fabricate a story for the law enforcement officers in an attempt to escape responsibility for the robbery.

Defendant argues that in determining whether a statement is trustworthy pursuant to sections 1250 and 1252 we must also consider " '[w]hether the statement is corroborated by evidence other than statements that are admissible' " pursuant to section 1370, subdivision (b)(3). Section 1370 establishes an exception to the hearsay rule for statements of a declarant relating to the infliction or threat of physical injury upon the declarant where the declarant is unavailable and the statements were made under circumstances that indicate their trustworthiness. (§ 1370, subd. (a)(1)–(4).) Section 1370, subdivision (b) sets forth three examples of circumstances relevant to the issue of trustworthiness "[f]or purposes of paragraph (4) of subdivision (a)." One such circumstance includes consideration of whether the statement is corroborated by other evidence. (§ 1370, subd. (b)(3).)[8]

---

[8] Defendant fails to cite other circumstances relevant to trustworthiness pursuant to section 1370, which include (1) whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested and (2) whether the declarant has a

Defendant argues that the trial court abused its discretion by concluding that the statements were not trustworthy because the surveillance video corroborates defendant's statements that she was trying to exchange a broken TV. We first note that defendant fails to cite any authority for the proposition that the definition in section 1370 is also applicable to sections 1250 through 1252. We have found no authority for applying the definition of "trustworthiness" found in section 1370 to other sections of the Evidence Code. Regardless, we conclude that the surveillance video does not support defendant's claim that she and Pulley were right to take the TV themselves. The video shows only that she attempted to return the TV, not that defendant believed that she was entitled to take a new TV when the employees refused to permit defendant to exchange it.

The trial court was within its discretion to conclude that defendant made the statements under circumstances in which she had a motive to deceive and exclude them for lack of trustworthiness under section 1252.

## III. The trial court's evidentiary rulings did not deprive defendant of her right to present a defense.

Defendant argues that the trial court's exclusion of her statements deprived her of the right to present a defense, relying on *Chambers v. Mississippi* (1973) 410 U.S. 284 (*Chambers*). However, our Supreme Court has recognized that " '[a]lthough [a] defendant had a constitutional right to have the jury hear all mitigating evidence …, "a … defendant has no federal constitutional right to the admission of evidence lacking trustworthiness, particularly when the defendant seeks to put [their] own self-serving statements before the jury without subjecting [themselves] to cross-examination." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 285.) In *Edwards*, the Supreme Court rejected the argument that Edwards was denied the right to present a defense by exclusion of his post-crime statements in a notebook and to a law enforcement officer

---

bias or motive for fabricating the statement, and the extent of any bias or motive. (§ 1370, subd. (b)(1), (2).)

14.

because they were inherently untrustworthy, and Edwards "was fully allowed to present a defense. He could have testified had he so chosen. [Citation.] [Edwards] has no right to effectively 'address the jury without subjecting himself to cross-examination.' " (*Edwards*, *supra*, 54 Cal.3d at p. 821.)

Defendant's reliance on *Chambers* is misplaced. In *Chambers*, Chambers was charged with murder, but another person confessed to friends that the person was the killer and later signed a sworn confession. (*Chambers*, *supra*, 410 U.S. at pp. 287–288.) When called as a witness by the defense, however, the person repudiated his confessions. (*Id*. at p. 288.) The state court prevented the defense from impeaching its own witness under an antiquated state rule of evidence, and excluded the confessions because Mississippi had no exception to the hearsay rule for statements against penal interest. (*Id*. at pp. 295–296, 299.) The United States Supreme Court concluded that Chambers's right to due process had been violated because the evidence was critical, and the state court ignored overwhelming indicia that the hearsay confessions were reliable. (*Id*. at pp. 297–298, 302–303.)

*Chambers*, however, "was an exercise in highly case-specific error correction" where erroneous evidentiary rulings combined to rise to a due process violation and does not hold that a defendant is denied their constitutional right to defend whenever critical evidence is excluded. (*Montana v. Egelhoff* (1996) 518 U.S. 37, 52; see *People v. Ayala* (2000) 23 Cal.4th 225, 269 [a defendant does not have a constitutional right to the admission of unreliable hearsay].) But even *Chambers* required that the excluded evidence have substantial indications of reliability, and our Supreme Court has held that " '[t]he same lack of reliability that makes … statements excludable under state law makes them excludable under the federal Constitution.' " (*People v. Butler* (2009) 46 Cal.4th 847, 867.)

Here, the exclusion of evidence was a garden-variety evidentiary issue and thus did not implicate defendant's federal constitutional right to present a defense. Further,

defendant has not shown her statements bore persuasive assurances of trustworthiness similar to the statements in *Chambers*, which were made spontaneously to a friend shortly after the murder occurred, were unquestionably against the declarant's interest, and were corroborated by other evidence in the case. (See *Chambers*, *supra*, 410 U.S. at pp. 291–293, 300, 301.)

Therefore, because the trial court did not abuse its discretion in concluding that defendant's statements lacked trustworthiness, the trial court did not violate defendant's federal constitutional rights by excluding them. Accordingly, defendant has failed to demonstrate a due process violation.

## DISPOSITION

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.